JAMES W. BROWN, Appellant, v. CASS COUNTY BANK *et al.*, Appellees.

1.  **Usury:** EVIDENCE.  For the purpose of paying certain usurious notes owing the defendant bank, the plaintiff gave his promissory note to the firm of D. & W. and received their check on said bank for the amount thereof.  In an action involving the collection of a renewal note given for the note to said firm, it appeared that one of the members of said firm was a director of the defendant bank; that

at the time said check was paid by the bank said firm had no funds on deposit; that the note to said firm bore the bank's number, and was deposited in the bank about nine days after it was given, without indorsement, and that credit therefor was then given said firm without allowance for accumulated interest; that the firm knew that the bank desired the plaintiff to reduce his indebtedness to it, because its transactions with him were usurious, and that said firm took the plaintiff's note for the purpose of accommodating the bank. It further appeared, however, that D. & .W. took said note with the intention of disposing of it to eastern correspondents, and finally transferred it to the bank because they were disappointed in not being able so to do; that they dealt regularly with the bank, and at times were indebted to it on large overdrafts; that the failure to indorse said note when deposited was through oversight, but that said renewal note when deposited was indorsed, and that the same was not protested when due, because protest was waived. *Held*, that the evidence failed to show that the transaction with D. & W. was merely a device of the bank to evade the law in regard to usury, and that said note was not tainted with the usury in the loans made by the bank.

2.  ———: ———: ILLEGAL INTEREST CHARGED BY MISTAKE. Where interest upon a loan was computed at a usurious rate, and included in the principal of a promissory note, which by its terms bore interest only from maturity, *held*, that it appearing from extraneous evidence that the charge of illegal interest was by mistake, the contract was not usurious.

3.  ———: ———. Where credits allowed a depositor in a bank on account of notes received were applied in whole or in part to the payment of usurious interest charged in other transactions, *held*, that the transactions were not thereby so connected as to entitle the depositor, in an action on said notes, to have the amount of such payments credited upon the principal of the notes sued upon, under the rule regarding the application of payments of illegal interest.

4.  ———: PAROL AGREEMENT TO PAY INTEREST HIGHER THAN LEGAL RATE. Under a statute fixing the legal rate of interest at six *per cent.*, but permitting parties to contract in writing for a rate not higher than ten *per cent. per annum*, a promissory note given in consideration of loans previously made under an oral agreement for the payment of interest thereon at the latter rate, is not usurious, and may be enforced.

5.  ———: FORFEITURE TO SCHOOL FUND: METHOD OF COMPUTATION. The amount of forfeiture on account of usury is to be ascertained by computing ten *per cent. per annum* upon the amount of the loan remaining unpaid, after deducting the payments made thereon, from the time it was borrowed, without regard to changes in the evidence of the indebtedness.

*Appeal from Cass District Court.*—HON. GEORGE CARSON, Judge.

SATURDAY, OCTOBER 22, 1892.

ACTION in equity to transfer the foreclosure of certain chattel mortgages to the district court, for an accounting and other relief. There was a hearing, and a decree on the merits. The plaintiff appeals.—*Modified and affirmed.*

*H. G. Curtis*, for appellant.

*C. F. Loofbourow* and *Phelps & Temple*, for appellees.

ROBINSON, C. J.—On the twenty-third day of October, 1885, the plaintiff made his promissory note for the sum of five thousand, four hundred and seventy-two dollars and fourteen cents, payable six months after its date, to the defendants, Dickerson & Wood, with interest at the rate of ten per cent. per annum from November 30, 1885. It was secured by one chattel and one real estate mortgage, executed on different dates. The note was given in renewal of one which the plaintiff had made to Dickerson & Wood on the tenth day of November, 1884, for the sum of five thousand, five hundred and forty-one dollars and sixty-six cents. That note was also payable six months after its date, bore interest at the rate of ten per cent. per annum, and was secured by a chattel mortgage. On the twenty-third day of December, 1887, the plaintiff made to Dickerson & Wood his promissory note for the sum of eight hundred and twenty-eight dollars and thirty cents, due four months after its date, with interest after maturity at the rate of ten per cent. per annum. To secure the payment of that note, the plaintiff at different times executed three chattel mortgages.

VOL. 86—34

Dickerson & Wood were attempting to foreclose the chattel mortgages described out of court, when this action was brought to transfer their foreclosure to the district court, the plaintiff alleging that the notes have been fully paid. Dickerson & Wood claim that they are unpaid and demand judgment for the amount due thereon, and ask for the foreclosure of their mortgages. The plaintiff also claims that the notes grew out of certain usurious transactions which he had with the Cass county bank; that the interest of Dickerson & Wood in the notes described was not acquired in good faith, but for the purpose of aiding the bank to avoid the defense of usury. The bank is made a party defendant.

After the action was commenced, the bank attempted to foreclose a chattel mortgage out of court, but on the petition of the plaintiff the foreclosure was transferred to the district court. The bank holds a note given to it by the plaintiff on the twenty-third day of October, 1885, for the sum of four thousand, four hundred dollars, with interest thereon at ten per cent. per annum from November 22, 1885, which is secured by a mortgage on certain real estate. It also holds a note made to it on the eighteenth day of January, 1888, by the plaintiff, for the sum of two thousand, one hundred and sixty-one dollars and twenty-one cents, payable on the tenth day of May, 1888, with interest thereon at ten per cent. per annum after that date. To secure the payment of that note the plaintiff executed to the bank a chattel mortgage. The bank demands judgment for the amount due on its notes, and asks for the foreclosure of its mortgages.

The plaintiff claims that these notes are usurious, and that they have been paid. He also claims damages caused by the negligent and improper treatment of live stock taken under chattel mortgages, and the taking of live stock not included in the mortgages, for removing

hogs, and for failure to satisfy mortgages of record.
The district court found in favor of the plaintiff and
against Dickerson & Wood for two hundred dollars on
account of negligent care of stock, and for twenty-five
dollars on account of failure to satisfy of record the
chattel mortgage dated November 10, 1884, and ren-
dered judgment in favor of Dickerson & Wood and
against the plaintiff for the amount of the note for
five thousand, four hundred and seventy-two dollars and
fourteen cents, after deducting the two hundred and
twenty-five dollars found in favor of the plaintiff, or
for the sum of seven thousand, eight hundred and
eighteen dollars and three cents and an attorney's fee
of one hundred and twenty dollars and forty-three
cents; and also for one thousand and forty-five dollars
and seven cents and an attorney's fee of fifty dollars
and forty-five cents on account of the note for eight
hundred and twenty-eight dollars and thirty cents.
The court also found that the chattel mortgage of
November 10, 1884, was not a lien on the property
therein described, and decreed that it be canceled. It
also decreed the foreclosure of the real estate and cer-
tain chattel mortgages given to secure the payment of
the notes specified, and the application of money in
the hands of the sheriff realized from the sale of mort-
gaged chattels to the satisfaction of the judgment. On
the issues presented by the pleadings of the plaintiff
and the Cass County Bank the court found that the
plaintiff was entitled to recover of the bank two
hundred and seventy-five dollars for its failure to
satisfy of record eleven mortgages, eight dollars for
damages to stock, and twenty-five dollars for remov-
ing stock ordered to be returned to him. It also
found that the note for four thousand, four hun-
dred dollars was usurious, and that there was due
thereon the sum of nine hundred and sixty-eight dol-
lars and seventy-six cents; also that there was due on

the note for two thousand, one hundred and sixty-one dollars and twenty-one cents, the sum of four hundred and ninety dollars and eighty-six cents, after deducting the three items aggregating three hundred and eight dollars, found in favor of the plaintiff, and an attorney's fee of forty-three dollars and ninety-six cents. Judgment was rendered according to the findings, and the foreclosure of certain mortgages was decreed. Judgment was also rendered against the plaintiff and in favor of the school fund for four hundred and fifty-two dollars and four cents. Some of the findings of the district court and portions of the decree are not involved in this appeal, and for that reason need not be specified.

I. About the year 1870, Isaac Dickerson and others entered into partnership for banking purposes under the name of the Cass County Bank.

1. USURY: evidence.

Some changes in the membership of the firm thus formed afterwards took place, but a partnership business under the name stated was carried on until the first day of May, 1876. At that time it was succeeded by a corporation organized under the laws of this state, and bearing substantially the same name. That corporation is a defendant in this action. The plaintiff opened an account with the bank in August, 1873, and had dealings with it and its successor until the tenth day of November, 1884. During most, if not all, of that time he carried on a large farm, and his financial transactions were large. He made many notes, which he secured by chattel and real estate mortgages, and his indebtedness grew until the date last named, when it was found that he was owing the bank about nine thousand dollars. Much, if not all, of the money he had received from it, was furnished at usurious rates of interest, and probably for that, as well as other reasons, it desired him to reduce the amount he was owing it, by means of a loan to be procured

elsewhere. The defendants Dickerson & Wood were making loans and discounting commercial paper Isaac Dickerson was a member of that firm, and also a director of the bank. There is a conflict in the evidence as to what transpired between the plaintiff and the bank and Dickerson & Wood, but a preponderance of the evidence fairly shows the following facts:

The bank offered to continue to carry four thousand dollars of the indebtedness of the plaintiff if he would pay the remainder which it held. He accepted the offer, and for the purpose of ascertaining the amount of money it was necessary for him to obtain elsewhere, he procured from the cashier of the bank a statement of his indebtedness. To that he made some additions, and when completed it showed that he needed five thousand, five hundred and forty-one dollars and sixty-six cents. That statement was taken to Dickerson & Wood, and, after some negotiations they took from the plaintiff his note for five thousand, five hundred and forty-one dollars and sixty-six cents, and gave him in exchange their check on the bank for that. amount. He deposited the check so received in the bank, and used the credit thus obtained in reducing his indebtedness to the bank and in paying amounts he owed to other creditors. Neither the note thus given, nor the one in suit, given in renewal of it, provided for the payment of illegal interest, and, if either was usurious, it was because of an usurious consideration for the first one. The plaintiff, while not denying that he gave his note and was given a credit by the bank as stated, insists that he did not in fact obtain a loan from Dickerson & Wood; that the entire transaction was merely a device to evade the law in regard to usury; and that the bank was the real, and Dickerson & Wood only the nominal, party in interest. As supporting his claims, he relies chiefly upon the following facts: That Dickerson was a member of the firm, and a

director of the bank; that the firm had no funds in the bank when the check was drawn and paid; that the note bore the bank's number; that it was deposited in the bank nine days after it was given, without indorsement, and credit therefor was then given the firm without allowance for accumulated interest; that, although a new note was given in renewal of the old one, and indorsed in blank by the firm, it was not protested when it became due and unpaid. The plaintiff also insists that he did not understand that in the transaction with the firm he was obtaining a new loan, but supposed that they were acting for the bank. He also insists that what the firm did was for the accommodation of the bank. The evidence shows, however, that Dickerson & Wood were acting for themselves, and not for the bank; that when they took the note it was with the intention of disposing of it on terms profitable to themselves, to eastern correspondents; that they were disappointed in not disposing of it as they had intended, and finally transferred it to the bank; that they dealt regularly with the bank, at times having large balances to their credit, and at other times being indebted to it on overdrafts; and that their transaction with the plaintiff as well as with the bank was in the regular course of their business. The fact that Dickerson was a director of the bank is immaterial, excepting as it may tend to show a motive for helping it. The firm of which he was a member was entirely separate and distinct from the bank. The fact that the note bore the bank's number is of little importance. It appears that Dickerson & Wood used, to some extent, blank notes which had been printed for the bank. Whether the number was printed in the blank before it was signed or written in after the note was transferred to the bank is not shown, and the fact, in either case, would be unimportant. It appears that the note was placed in the bank without indorsement, but it also appears that the

failure to indorse it was the result of a mere oversight, and that both Dickerson and Wood supposed that it was indorsed, and regarded themselves as indorsers, and that such was the understanding of the bank. The renewal note was indorsed, and there is some evidence which tends to show that a waiver of protest was also indorsed; but, whether there was such an indorsement or not, it is clear that protest was in fact waived, and that the indorsers regarded themselves as held on the note, notwithstanding the omission to protest it, and that their arrangement with the bank and their interest in the note are such that they are entitled to recover on it. It is not strange, if it be true, that there was no allowance for accumulated interest when the first note was transferred to the bank, in view of the fact that it was paid for by an overdraft on the bank. It is probable that the note was taken partly for the purpose of accommodating the bank, and that the bank desired to have the plaintiff reduce his indebtedness in part for the reason that it was tainted with usury. And Dickerson & Wood may have known that fact when they made the loan; but, if that be true, it does not taint the loan they made with usury. *Mason v. Searles,* 56 Iowa, 535; *Wendlebone v. Parks,* 18 Iowa, 547; *Switz v. Platts,* 15 Iowa, 298; *Call v. Palmer,* 116 U. S. 98; 6 Sup. Ct. Rep. 301. The claim of the plaintiff that he did not know that he was obtaining a new loan from Dickerson & Wood is not sustained by the evidence. Some of the statements he makes in regard to the transaction are shown clearly to be erroneous, and others are contradicted by a preponderance of the evidence. We conclude that the note for five thousand, four hundred and seventy-two dollars and fourteen cents in suit is not tainted with usury in loans made by the bank, and that Dickerson & Wood are entitled to recover the full amount thereof remaining unpaid, with interest.

II.  On the twenty-third day of December, 1887,
Dickerson & Wood loaned to the plaintiff seven hun-
dred and ninety-six dollars and fifty-one
cents, with which to pay to others interest
which he owed, taxes on his land, and
exchange, and for drawing and recording a mortgage,
and took from him the eight hundred and twenty-eight
dollars and thirty cents note in suit.  The note bore no
interest until maturity, the interest to that time having
been included in the amount for which it was given.
It appears that the amount added to the sum specified
equaled interest on that sum to the maturity of the note
at the rate of twelve per cent. per annum, but Wood
testifies that it was the intention to charge but ten per
cent. interest on the loan, and as to that he is not con-
tradicted.  The plaintiff insists, however, that the con-
tract is the evidence of the intent, and that, as it in
effect provides for the payment of usurious interest, no
interest can be recovered.  The note is not usurious
unless there was an agreement to pay more than inter-
est at ten per cent. per annum.  It is not usurious on
its face, and the evidence satisfies us that there was no
intent to contract for usurious interest.  By mistake a
sum amounting to about five dollars was included in
the note which was not contemplated by the agreement
of the parties, and which is neither principal nor inter-
est, and, as to that, the note is without consideration;
but it cannot be said to be usurious, for the reason that
there was no intent, in making and receiving the note,
to provide for the payment of an illegal rate of interest.
See Tyler on Usury, 103.

2. ___: ___: ille-
gal interest
charged by
mistake.

III.  The note owned by the Cass County Bank for
four thousand, four hundred dollars grew out of the
following transactions:  On the twenty-
third day of September, 1876, the plaintiff
gave to the bank his note for one thousand, five
hundred dollars, and was given a credit therefor on the

3. ___: ___.

books of the bank of one thousand, four hundred and forty dollars and forty cents. It was paid with a note dated January 1, 1877, given by plaintiff to the bank for the sum of one thousand, six hundred dollars. On the tenth day of April, 1877, the plaintiff gave to the bank his note for five hundred and fifty dollars, and received therefor a loan of five hundred and twenty-eight dollars and sixty-eight cents. On the twenty-fifth day of May, 1877, he gave to the bank his note for one thousand, eight hundred dollars, and received credit on account for that amount; sixty-nine dollars and seventy-five cents were paid in advance as interest on the note for ninety days. The plaintiff claims that this note was in renewal of the one for one thousand, six hundred dollars, but his testimony in regard to it is contradictory. He admits that he had paid one thousand dollars on the note on the tenth day of May, 1877. He received credit for the full amount of the one thousand, eight hundred dollar note, and the entire evidence shows that it was not given in renewal of a previous indebtedness, but that it should be treated as an original transaction. The notes for one thousand, five hundred dollars and one thousand, six hundred dollars will not, therefore, be further considered. On the twenty-second day of August, 1877, plaintiff gave to the bank his note for three thousand dollars, which included one hundred and twenty-eight dollars and ninety-seven cents for interest. With the proceeds of that note he paid the notes for five hundred and fifty dollars and one thousand, eight hundred dollars, and was credited on account with five hundred and twenty-one dollars and three cents. On the twenty-sixth day of April, 1878, he gave the bank his note for three thousand and seventy dollars, which included interest to the amount of two hundred and twenty-seven dollars and fourteen cents. For the remainder of the note two thousand, seven hundred and eighty-two dollars were

applied in payment of the amount then due on the three thousand dollar note, and sixty dollars and eighty-six cents were placed to his credit on account. On the thirteenth day of February, 1879, he gave the bank his note for three thousand, eight hundred and forty dollars of which one thousand, eight hundred and seventy-four dollars were used in paying the balance then due on the three thousand and seventy dollar note, two hundred and twenty-five dollars and thirty-four cents were for interest, eighty-five cents were for recording a mortgage, and one thousand, seven hundred and thirty-nine dollars and eighty-one cents were placed to his credit. On the sixth day of June, 1879, he gave the bank a note for four thousand, seven hundred and forty dollars, which paid the advance interest, amounting to one hundred and seventy-four dollars, the note for three thousand, eight hundred and forty dollars and gave him a credit of seven hundred and twenty-six dollars. On the second day of January, 1880, he gave the bank two notes, one of which was for five thousand dollars and the other was for eight hundred and fifteen dollars. With the proceeds of these notes he paid the note for four thousand, seven hundred and forty dollars and four hundred and fifty-one dollars and seventeen cents interest. At the same time he paid nine hundred and seventeen dollars and forty-five cents in cash, and took up some other notes. In June, 1880, he gave to the bank two notes dated May 13, 1880, one of which was for four thousand dollars and the other was for six hundred dollars, and a check for nine hundred and twelve dollars and fifty cents. With the proceeds of these notes and check he paid the five thousand dollar note, one dollar and fifty cents for drawing and recording a mortgage, and five hundred and eleven dollars interest on the note last named and on the new notes. The notes for eight hundred and fifteen dollars and six hundred dollars were paid in

cash. On the note for four thousand dollars there were paid one thousand, two hundred dollars as interest, and on the twenty-second day of November, 1883, it was paid with a new note for four thousand dollars, on which a credit was indorsed of interest to May 13, 1884, on account of interest paid on the note for which it was given. A further payment of two hundred and ten dollars for interest on this note was also made. On the twenty-third day of October, 1885, the note was paid by giving the one in suit for four thousand, four hundred dollars. It includes four hundred dollars for interest. That it is usurious is evident. The interest paid on the various notes out of which it grew amounted, in June, 1880, to one thousand, eight hundred and eight dollars and sixty-nine cents. Since that time one thousand, four hundred and ten dollars have been paid, exclusive of the four hundred dollars for interest included in the note in suit. The district court allowed other credits on the note to the amount of two hundred and eighty-nine dollars and seventy-five cents, and, as defendants do not appeal, they must be allowed by us. Deducting the aggregate of these sums, and four hundred dollars included in the note for interest, and the remainder of the four hundred and ninety-one dollars and fifty-six cents represents the amount which the bank is entitled to recover on this note.

It is insisted by the appellant that the proceeds of the different notes which were placed to his credit on the books of the bank should be followed, and when it is found that such credits have been used, in whole or in part, for the payment of usurious interest, that the amount of such payment should be deducted from the note in suit. The theory of the appellant seems to be that, as he had an account with the bank and its predecessor from August, 1873, to November, 1884, the crediting of the proceeds of the notes in that account so connected it with the notes as to make them

and the account parts of the same transaction. He gave to the bank numerous notes we have not described on which he paid illegal rates of interest, and he was charged interest on overdrafts, and, if his claim is well founded, it is probable that it would be found that nothing is due on the note under consideration. But we do not think the claim is well founded. The notes were not in any manner connected with the account. When a credit was given for the proceeds of a note, the transaction, as to the note, was as fully closed as though money had been given to the plaintiff instead of the credit. If that had been done, and he had afterwards applied the money so received in paying to the bank usurious interest on a contract wholly disconnected with the notes we have described, it could not be successfully claimed that the money so paid could be followed, and its amount allowed on the note in suit. We think the same rule should be applied to the credits in question. It is not shown that there was any agreement when they were given, that any part thereof was to be used in paying usurious interest, and their use for such a purpose was not the result of any agreement shown to have been made with the bank.

IV. The material facts involved in the giving of the note for two thousand, one hundred and sixty-one dollars and twenty-one cents are substantially as follows: In the fall of the year 1887 the bank furnished to the plaintiff various sums of money to be used by him in buying cattle, under a verbal agreement that he should pay interest thereon at the rate of ten per cent. per annum. On the eighteenth day of January, 1888, interest was computed on those loans at the rate of ten per cent. per annum. The amount was found to be two thousand, one hundred and sixty-one dollars and twenty-one cents, and for that the note was given. There is no dispute as to the items which constitute the consideration of the note.

4. ——: parol agreement to pay interest higher than legal rate.

There is some claim that the interest included was in. excess of ten per cent. per annum, but, if that be true, the excess was included by mistake, and is merely nominal. After the note was given, the bank furnished the plaintiff other money with which to buy corn for the cattle, on which ten per cent. interest was charged. The cattle were sold, and a draft for the proceeds, amounting to two thousand, five hundred and seventy dollars and eighty-five cents, was deposited in the bank, of which one thousand and fifty-four dollars and seven cents were used to repay the corn money and interest. thereon, at ten per cent. per annum, and one thousand, five hundred and sixteen dollars and seventy-eight cents were indorsed on the note. A further payment thereon of twenty dollars was afterwards made. It is insisted by the plaintiff that all the interest in excess of six per cent. per annum which was included in the note was illegal, and therefore that the note is usurious. At the time this transaction occurred, the legal rate of interest was six per cent. per annum, but it was competent for the parties to a contract to "agree in writing for the payment of interest not exceeding ten cents on the hundred by the year." Code, section 2077,. subd. 7. Section 2080 provides that, "If it shall be ascertained in any suit brought on any contract that a rate of interest has been contracted for, greater than is. authorized by this chapter, either directly or indirectly, * * * the same shall work a forfeiture of ten cents. on the hundred by the year upon the amount of such contract to the school fund of the county in which the suit is brought, and the plaintiff shall have judgment. for the principal sum, without either interest or cost." It will be noticed that the forfeiture occurs only when it is ascertained that a greater rate of interest has been contracted for than that authorized by the statute. But that authorized parties to contract for ten per cent. per annum, and there was no forfeiture when they at--

tempted to make an oral contract for that rate. Such a contract would not be enforced for the amount agreed upon, but would be good for a rate of six per cent. per annum. *Brockway v. Haller*, 57 Iowa, 368. Therefore it would not be usurious, within the meaning of the statute. This court has held that when a verbal agreement to pay interest at ten per cent. per annum has been made, and the amount due thereunder is afterwards ascertained, and an obligation in writing is given therefor, the obligation is valid. *First National Bank v. Fenn*, 75 Iowa, 222. Under that rule, when the plaintiff gave his note for the interest which had accrued at ten per cent. per annum, he gave a valid obligation to pay it. The note under consideration is not affected by charges for interest on money furnished after it was given, and is not usurious.

V. The evidence in regard to damages on account of stock is conflicting, but we think it sustains the findings of the district court with respect to them. All the credits on the notes in suit to which the plaintiff is entitled were allowed, excepting on the note for four thousand and four hundred dollars. Judgment will be rendered on that in favor of the Cass County Bank and against the plaintiff for four hundred and ninety-one dollars and fifty-six cents.

5. ——: forfeiture to school fund: method of computation.

The amount of the forfeiture on account of usury is to be ascertained by computing ten per cent. per annum on the amount of the loan remaining after deducting therefrom payments made. *Lombard v. Gregory*, 81 Iowa, 574. The computation is to be made on the amount remaining due from the time it was borrowed, without regard to changes in the evidence of indebtedness. *Drake v. Lowry*, 14 Iowa, 127. It is also to be made as it would be between borrower and lender. *Sheldon v. Mickel*, 40 Iowa, 21. Payments made will be applied on the money first borrowed. It

appears that the last credit given to the plaintiff on the notes involved in these transactions was on account of the note for four thousand, seven hundred and forty dollars, made on the sixth day of June, 1879, and the amount of that credit was seven hundred and twenty-six dollars, or more than the amount now remaining due. The forfeiture will, therefore, be computed from the date of that note, and amounts to six hundred and sixty-three dollars and fifty-eight cents. Judgment for that amount will be rendered against the plaintiff and in favor of the state for the use of the school fund of Cass county. Excepting where we have otherwise indicated, the decree of the district court will be affirmed. One-fourth of the costs of this appeal will be taxed to the Cass County Bank, and the remainder to the appellant.

VI. The appellant, in his reply, asks some relief in regard to redemption of his land from alleged sales thereof in foreclosure proceedings. There is nothing in the record before us to authorize the giving of the relief asked. The decree of the district court is modified and AFFIRMED.