FIRST NATIONAL BANK OF WESTHOPE, a Corporation, v.
J. M. MESSNER and P. S. Hilleboe (P. S. Hilleboe, Appellant).

(159 N. W. 92.)

**Bank — damages — action — vice president — securities — wrongful release —
interest due — answer — denials — jury — findings of — issues — evidence
— sufficiency of — verdict — directed.**

1. In an action by a bank to recover damages against its former vice president
for the alleged wrongful release of certain securities claimed to be held by such
bank, without first collecting interest due it, the answer denies that any such
securities were held by the bank, and also denies that he wrongfully released any
such alleged securities. The jury found both issues in plaintiff's favor. The
sufficiency of the evidence to sustain these findings was challenged in the trial
court, and is now challenged on this appeal.

*Held*, for reasons stated in the opinion, that the evidence is insufficient to
sustain the latter finding, and that a verdict for appellant should have been
directed.

**Contract — interest — excess of legal rate — must be in writing.**

2. A contract, not in writing, to pay interest in excess of the legal rate may
be enforced for such legal rate only.

Opinion filed June 15, 1916. Rehearing denied September 8, 1916.

Appeal from District Court, Bottineau County, *A. G. Burr*, J.

From a judgment in plaintiff's favor and from an order denying
defendant's motion for a new trial, defendant appeals.

Reversed and judgment directed to be entered for a dismissal of the
action.

*Cowan & Adamson* and *H. S. Blood*, for appellant.

Interest for any legal indebtedness shall be at the rate of 7 per cent,
unless a different rate is specified in writing. Comp. Laws 1913,
§§ 5888, 6072, subdiv. 5.

In the absence of a written promise, the law fixes the rate of interest
on all legal indebtedness. Lowe v. Jensen, 22 N. D. 148, 132 N. W.
661; 9 Cyc. 749, and cases there cited.

At the time the lands were conveyed by the bank, it had in its hands
moneys belonging to the land company, more than enough to take up

plaintiff's claim, and at any time during this period the bank could have applied this deposit on the indebtedness. Shuman v. Citizens' State Bank, 27 N. D. 599, L.R.A.1915A, 728, 147 N. W. 388.

*Bangs, Netcher, & Hamilton* and *Soule & Cooper,* for respondent.

The evidence in this case is conflicting, but the verdict is supported by substantial evidence, and therefore must stand. Lang v. Bailes, 19 N. D. 587, 125 N. W. 891, and cases cited.

Where the jury finds a verdict for plaintiff, and the trial court refuses to set it aside, such a verdict will not be disturbed when it appears there is substantial conflict in the evidence. F. A. Patrick & Co. v. Austin, 20 N. D. 261, 127 N. W. 109; Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225; O'Chander v. Dakota County, 90 Neb. 3, 132 N. W. 722.

Where the evidence is contradictory, and the determination of the question depends upon the credibility of the witnesses, the question is solely for the jury. Appellate courts do not weigh conflicting evidence. McKnight v. Bell, 168 Pa. 50, 31 Atl. 942; Moulor v. American L. Ins. Co. 101 U. S. 708, 25 L. ed. 1077; Casey v. First Bank, 20 N. D. 211, 126 N. W. 1011; Libby v. Barry, 15 N. D. 286, 107 N. W. 972; Drinkall v. Movius State Bank, 11 N. D. 10, 57 L.R.A. 341, 95 Am. St. Rep. 693, 88 N. W. 724; State v. Foster, 14 N. D. 561, 105 N. W. 938; Anderson v. Medbery, 16 S. D. 329, 92 N. W. 1087; Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249, 91 N. W. 63, 12 Am. Neg. Rep. 619; Dewey v. Chicago & N. W. R. Co. 31 Iowa, 373.

That the trial court has acted arbitrarily, oppressively, or in defiance of law must be affirmatively shown, or the order denying a new trial will not be disturbed, the presumption being that the evidence is sufficient to justify the verdict. Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249, 91 N. W. 63, 12 Am. Neg. Rep. 619; Ross v. Robertson, 12 N. D. 27, 94 N. W. 765; State v. Howser, 12 N. D. 495, 98 N. W. 352; Galvin v. Tibbs, 17 N. D. 600, 119 N. W. 39.

There must be a clear showing of abuse of discretion by the trial court, if there is evidence in the record fairly tending to support the verdict. Bristol & S. Co. v. Skapple, 17 N. D. 271, 115 N. W. 841; State v. Denny, 17 N. D. 519, 117 N. W. 869; Libby v. Barry, 15 N. D. 286, 107 N. W. 972; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Stoakes v. Monroe, 36 Cal. 388, 2 Mor. Min. Rep. 246; 14 Enc.

Pl. & Pr. 791; State v. Albertson, 20 N. D. 512, 128 N. W. 1122.; Finch v. Martin, 13 S. D. 274, 83 N. W. 263; Wheeler v. Castor, 11 N. D. 347, 61 L.R.A. 746, 92 N. W. 381; Esshom v. Watertown Hotel Co. 7 S. D. 74, 63 N. W. 229; Distad v. Shanklin, 11 S. D. 1, 75 N. W. 205; Dinnie v. Johnson, 8 N. D. 153, 77 N. W. 612; Magnusson v. Linwell, 9 N. D. 154, 82 N. W. 746; Baker v. Baker, 2 S. D. 261, 39 Am. St. Rep. 776, 49 N. W. 1064; Irving v. Dockstader, 12 S. D. 320, 81 N. W. 629; Howland v. Ink, 8 N. D. 63, 76 N. W. 992; Flath v. Casselman, 10 N. D. 420, 87 N. W. 988; Weiss v. Evans, 13 S. D. 185, 82 N. W. 388; Witte v. Koeppen, 11 S. D. 598, 74 Am. St. Rep. 826, 79 N. W. 831; Bauder v. Schamber, 7 S. D. 54, 63 N. W. 227.

The province of the appellate court in such appeals is only to determine whether there is evidence legally tending to prove the fact affirmed. Vaughan v. Chicago Junction R. Co. 249 Ill. 206, 94 N. E. 40; Pratt v. Stone, 10 Ill. App. 633; Frazer v. Howe, 106 Ill. 563; Union Stockyards Co. v. Conoyer, 38 Neb. 488, 41 Am. St. Rep. 738, 56 N. W. 1081; Marshall v. Harney Peak Tin Min. Mill & Mfg. Co. 1 S. D. 350, 47 N. W. 290; Kielbach v. Chicago, M. & St. P. R. Co. 13 S. D. 629, 84 N. W. 192; McKnight v. Bell, 168 Pa. 50, 31 Atl. 942; Moulor v. American L. Ins. Co. 101 U. S. 708, 25 L. ed. 1077; McGill v. Young, 16 S. D. 360, 92 N. W. 1066; Comptograph Co. v. Citizens' Bank, 32 N. D. 59, 155 N. W. 680.

Parties may, under the statute, orally contract that the rate of interest on a legal indebtedness shall be 10 per cent, and there is no forfeiture. Such a contract would not be enforced for the amount agreed upon, but would be good for a rate of 7 per cent. Brockway v. Haller, 57 Iowa, 368, 10 N. W. 752; First Nat. Bank v. Fenn; 75 Iowa, 221, 39 N. W. 279; Brown v. Cass County Bank, 86 Iowa, 527; 53 N. W. 410; Sprague v. Benson, 101 Iowa, 678, 70 N. W. 731; Grey v. Callan, 133 Iowa, 500, 110 N. W. 909; 22 Cyc. 1529.

In charging the jury, it is not necessary that the trial court should duplicate correctly stated propositions of law, even though requested to do so. Moline Plow Co. v. Gilbert, 3 Dak. 239, 15 N. W. 1; State v. Campbell, 7 N. D. 58, 72 N. W. 935; State v. Kent (State v. Pancoast), 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052; State v. Stout, 49 Ohio St. 270, 30 N. E. 437; McHugh v. State, 42 Ohio St. 154.

Neither appellant nor the land company can complain if the bank

took and held legal title to the land as security. Such question could only be raised by the Federal government. Michie, Banks & Bkg. § 259, 1aa; First Nat. Bank v. Messner, 25 N. D. 263, 141 N. W. 999.

FISK, Ch. J. This cause was tried to a jury and resulted in a verdict for plaintiff bank in the sum of $2,285.24. A motion for a new trial upon specifications of errors, including alleged insufficiency of the evidence, also newly discovered evidence, was denied, and the appeal is from both the order denying the motion and the judgment entered pursuant to the verdict.

Plaintiff bank sued to recover damages in the sum of $2,957.28 for the alleged wrongful and intentional breach of duty by defendants while executive officers of such bank in failing and omitting to collect interest claimed to be due it from the Westhope Land & Loan Company. That a correct understanding of the issues may be had, we here set out the complaint and answer. Omitting formal parts, the complaint (after alleging in the first four paragraphs plaintiff's incorporation, as well as that of the Westhope Land & Loan Company, and the fact that defendant P. S. Hilleboe was, at all times mentioned, the vice president of the bank, and also the president of the Land & Loan Company, and also defendant J. M. Messner's relation to such bank and Land & Loan Company as cashier and secretary respectively) is as follows: "That prior to the 15th day of June, 1905, it was agreed by and between the plaintiff herein and the said Westhope Land and Loan Company that the plaintiff herein would, from time to time, as the needs of the said Westhope Land & Loan Company might require, and upon sufficient real estate security, loan to the Westhope Land & Loan Company such sums of money as might be needed to enable the said Westhope Land & Loan Company to carry on its business, and it was specifically agreed between the said plaintiff herein and the said Westhope Land & Loan Company that when the sums of money so loaned by this plaintiff to the said Westhope Land & Loan Company should be returned and paid to this plaintiff, the said Westhope Land & Loan Company should also pay and return to the said plaintiff herein interest upon each of the said loans at the rate of 12 per cent per annum thereon, and that the security so given to the plaintiff herein should be retained by this plaintiff as security for the said loan until the full amount of said loan with in-

35 N. D.—6.

terest thereon at the rate of 12 per cent per annum was repaid to the plaintiff herein, and that all the terms of this said agreement were at all times fully known to both of the defendants herein.

"That pursuant to said agreement the plaintiff herein loaned to the said Westhope Land & Loan Company on the 15th day of June, 1905, the sum of fourteen hundred dollars ($1,400), on the 4th day of January, 1906, the sum of nine hundred thirty-five dollars ($935), on August 24th, 1906, the further sum of five hundred fifty dollars ($550), on August 24th, 1906, the further sum of twelve hundred eighty dollars ($1,280), on August 24th, 1906, the further sum of five hundred twenty-five ($525) dollars, and on October 1, 1906, the sum of thirty-six hundred ninety-eight dollars and three cents ($3,698.03); and that as security for each of said loans, the plaintiff herein received from the said Westhope Land & Loan Company conveyances of certain parcels of real estate, which said real estate so conveyed as security as aforesaid largely exceeded in value the amount of said loans and interest thereon at the rate of 12 per cent per annum.

"That all the said loans were thereafter repaid by the said Westhope Land & Loan Company to this plaintiff without interest, and that these two defendants, without right or authority, and with full knowledge of all the terms of the agreements hereinbefore set forth, and in violation of their duties as cashier and vice president, respectively, of this plaintiff, and with the wrongful intention of defrauding this plaintiff, and with wrongful intention of perverting funds of this plaintiff to their own use, did wrongfully and unlawfully jointly conspire to and did convey and release unto the said Westhope Land & Loan Company the real estate securities held by this plaintiff to secure the payment of the said loans, together with interest thereon, and failed and neglected to collect the stipulated interest on the said loans, all to the plaintiff's damage in the sum of twenty-nine hundred fifty-seven dollars and twenty-eight cents ($2,957.28), no part of which has been paid, though payment thereof has been demanded.

"That the said Westhope Land & Loan Company has neglected and refused to pay said interest or any part thereof, and is, and for a long time prior hereto has been, insolvent and without any property out of which any judgment against the said company can be collected, either

upon execution or otherwise, and has no property subject to levy under any process whatsoever.

"That the defendants are not now, and long before this action was commenced ceased to be, officers of the plaintiff bank, but are and at all the times herein mentioned have been stockholders and officers of the said Westhope Land & Loan Company, for whose benefit and that of these defendants the securities mentioned in paragraph 7 were released.

"That the loans hereinbefore mentioned were respectively repaid to this plaintiff without interest on the following dates; to wit, January 26th, 1909; September 28, 1909; September 28, 1909; April 1st, 1909; September 28th, 1909; March 13, 1909."

Following is the answer: "Come now the defendants, and for answer to plaintiff's complaint,

"(1) Deny each and every allegation, matter, and thing contained in plaintiff's complaint not hereinafter specifically denied, admitted, or qualified.

"(2) The defendants specifically deny that the alleged contract between the plaintiff and the Westhope Land & Loan Company, set forth in paragraph 5 of plaintiff's complaint, was ever made, or that any contract between the plaintiff and said Land & Loan Company was ever made for the plaintiff to advance said land company moneys and take real estate security therefor, and further deny that the plaintiff ever loaned said Westhope Land & Loan Company any moneys pursuant to any such alleged agreement, and deny that the said Westhope Land & Loan Company ever made any conveyance of any real estate to the plaintiff as security for any moneys borrowed from the plaintiff.

"(3) These defendants specifically deny that they ever released to the Westhope Land & Loan Company any real estate security held by the plaintiff, and specifically allege that the plaintiff made purchases of certain lands, acting through Mr. J. W. Cooper, then cashier of said plaintiff, and now one of the attorneys for the plaintiff, from the said Westhope Land & Loan Company and others, and paid for said lands the amounts set forth in paragraph 6 of plaintiff's complaint, and that the said transfers to the plaintiff were made long prior to the time that the defendant J. M. Messner owned any interest in the said plaintiff bank, or had any connection with it whatsoever, and only a part of said

purchases were from said land company, or were land owned by said company, or in which it had any interest.

"(4) That after said lands were thus transferred to the plaintiff, through the order of the bank examiner and comptroller of the currency, the plaintiff resold the said lands, realizing on said sales the amounts paid by the plaintiff therefor, which said amount was then the full value thereof.

"(5) That at the time of the said sale of the said lands, these two defendants and one Murphy, then president of the plaintiff bank, owned all of the stock of said bank except a few shares owned by Mrs. Murphy, wife of the president, and Mrs. Hilleboe, wife of the defendant, and no other person outside of these had any interest in said plaintiff bank whatsoever, and the sales of said land were made by, and with the consent of, all of these persons.

"(6) That the said plaintiff bank has been dissolved, and all of the depositors have been paid, and any interest they or any person outside of the aforenamed persons, at the time of its dissolution, may have had in the assets of the said bank, was acquired after the act complained of by the plaintiff, and with full knowledge thereof, and no said person was damaged in any manner whatsoever by the sale of the said lands.

"(7) For further defense, defendants allege that prior to the bringing of this action the said plaintiff bank had been dissolved, and that the proceeds thereof had been sold, and all of the affairs of the bank were in the liquidating agent for the stockholders, J. E. Roman, and that said action was not instituted in the name of such liquidating agent, and is being prosecuted without authority from the now liquidating agent, J. L. Page.

"(8) For further defense, the defendants allege that at the time the said lands were sold the plaintiff received full value therefor, and all that could be obtained at the time of said sale, and that it was not injured in any manner whatsoever by reason of said sales, and by the making of said sale prevented the bank from having its charter canceled.

"(9) For further defense, these defendants specifically deny that the plaintiff was injured by any failure or neglect on the part of either or both of these defendants to collect any alleged balance of indebtedness due from the said Westhope Land & Loan Company to the plaintiff,

and these defendants specifically allege that during the month of November, 1909, and long after the plaintiff had sold the land set forth in its complaint with full knowledge of the sale of such lands, and after both of these defendants had sold all of their interests in said plaintiff bank, that the plaintiff purchased from the said Westhope Land & Loan Company assets far in excess of the amount claimed in plaintiff's complaint, a part of which said amount was paid by plaintiff to the said Westhope Land & Loan Company in cash, and the balance, which the defendants allege to be $3,318.83, was placed on deposit in said plaintiff bank to the credit of the said Westhope Land & Loan Company, and which amount was afterwards paid by the bank, all of which was done at the time when neither of these defendants owned any interest in the said bank, and with full knowledge on the part of the bank of the said sale of the said lands, and without any act on the part of either or both of these defendants.

"Wherefore, the defendants pray that the plaintiff's action be dismissed and that judgment be rendered against the plaintiff and in favor of the defendants for a dismissal of this action."

The issues, in substance, therefore, were: 1st. Whether an understanding was had between the bank and the loan company whereby the former agreed to make loans to the latter and the latter agreed to borrow from the former from time to time moneys at the stipulated rate of 12 per cent upon real estate security?

2d. If such an understanding existed, then whether, in fact, loans were thus made and lands transferred to the bank as security, pursuant thereto, as alleged in the complaint?

3d. If so, did defendants wrongfully release such security as alleged, and

4th. Were all matters in dispute between the parties settled prior to the commencement of this action?

Appellant's counsel contend that each of these issues should have been answered in appellant's favor, and that the finding of the jury to the contrary is not supported in the evidence.

The following facts are not in dispute: Plaintiff is a national banking corporation, with a capital stock of $25,000; one Geo. Sundberg was its president from its organization in April, 1904, until about August, 1908, when he was succeeded by one Julius K. Rosholt, who was its

president until November or December, 1909, when he in turn was succeeded by one R. H. Murphy, who continued as president until the liquidation of such bank on December 12, 1910; defendant Hilleboe was vice president of the bank until the winter of 1909–10; one W. J. Cooper was its cashier until about August, 1908, when he was succeeded by the defendant Messner, who acted in that capacity until December, 1909, when Cooper again became such cashier, and remained such until August 27, 1910. The Westhope Land & Loan Company was a domestic corporation, engaged in a general land and loan business at Westhope, having its office and place of business in the plaintiff's bank building. It had a capital stock of $5,000, and defendant Hilleboe, besides being vice president of the bank, was president and managing officer of such loan company until the winter of 1909–10, when it ceased doing business. Cooper, besides being cashier of the bank, was secretary and treasurer of the loan company from May, 1904, until about January 1, 1909, when he was succeeded by Messner. The entire capital stock of the loan company was held by the officers of the bank and their wives.

In the light of the issues and the undisputed facts above stated, we proceed to consider appellant's points in the order presented in his brief.

He contends that the evidence is insufficient to support the verdict, first, because it fails to establish that a contract was made as alleged; second, because it fails to establish that the alleged loans were in fact made, and, third, because it fails to show that the alleged real estate security was wrongfully released as alleged.

In support of their first contention counsel argue that the only evidence to show a contract was the oral testimony of Cooper, the cashier of the bank, who narrated a conversation between himself and Sundberg, the president, which testimony was incompetent and duly objected to for the reason that a contract to pay 12 per cent interest would, under § 6072, Compiled Laws, have to be in writing, also a contract to give real estate security must, to be valid, be reduced to writing under the provisions of § 5888, Compiled Laws. Counsel are no doubt partially correct, but while the district court admitted the testimony, he instructed the jury that if they found there was a contract to pay interest, no more than 7 per cent could be allowed, and this is all that was allowed. The fact that Cooper's testi-

mony does not show a valid and enforceable contract binding the bank to loan and the loan company to borrow is not controlling. Such testimony merely tended to show preliminary negotiations or talks relative to the bank making loans to the loan company on certain terms. While such negotiations did not rise to the dignity of even an executory contract, so as to bind either the bank or loan company, yet we think the proof was admissible in connection with the other proof disclosed in the record tending to show that loans were actually made pursuant thereto or as a result thereof. The books of both the bank and loan company were introduced, as well as other testimony, tending to establish that loans were in fact subsequently made pursuant to such arrangement or talks.

But counsel argue that such oral negotiations were inadmissible even for the purpose of shedding light on the subsequent transactions to indicate whether they were in fact loans and conveyances as security or otherwise, their contention being that "so long as the twelve per cent agreement was not established, even if the subsequent transactions were in fact loans, and the conveyances were in fact security, no recovery of the interest could be had in the action, for the complaint alleged that the interest in question was due under an express contract to pay 12 per cent," and no recovery can be had on a *quantum meruit*. In other words, having failed to prove as alleged a contract for 12 per cent interest, plaintiff is out of court. We deem such argument unsound. Its fallacy, as we view it, lies in the unwarranted assumption that no recovery upon the express contract pleaded can be had for a less sum than that stipulated for by its terms. The contract to pay 12 per cent interest was not illegal, but merely unenforceable because not in writing. The contract was enforceable up to 7 per cent. Section 6072, Compiled Laws, which provides that "interest for any legal indebtedness shall be at the rate of 7 per cent per annum, *unless a different rate is contracted for in writing*," merely prevents the recovery of a greater sum than 7 per cent. It does not render the contract invalid and thereby compel a resort to the *quantum meruit*. It does not affect the contract at all further than to limit the recovery thereunder. Ample authority exists in support of this construction. Brockway v. Haller, 57 Iowa, 368, 10 N. W. 752; Nevada First Nat. Bank v. Fenn, 75 Iowa, 221, 39 N. W. 279; Brown v. Cass County

Bank, 86 Iowa, 527, 53 N. W. 410; Sprague v. Benson, 101 Iowa, 678, 70 N. W. 731; Grey v. Callan, 133 Iowa, 500, 110 N. W. 909; 22 Cyc. 1529.

These authorities all squarely support the rule that the *contract* may be enforced for the statutory rate. The rule of Lowe v. Jensen, 22 N. D. 148, 132 N. W. 661, cited by appellant, is not applicable. That case merely recognizes the general rule that a recovery on the *quantum meruit* cannot be had in an action based solely on an express contract.

This brings us to appellant's contention that the evidence is insufficient to establish that the alleged loans were made by the bank to the loan company. There is much in the record lending support to appellant's view. The form the transactions took, together with other evidence which we will presently notice, upon its face very forcibly corroborates appellant's version that the transfers to the bank were intended to be absolute, and not as security for loans. But the jury found otherwise, and on motion for a new trial, the trial judge, who saw and heard the witnesses testify, refused to disturb the verdict, and under the well-settled rule we are powerless to interfere with such ruling if there is any substantial and competent evidence to support such verdict.

The testimony is very voluminous, and we shall not attempt to review it at length in this opinion, and shall refrain from doing more than giving in a general way the substance thereof as to its most salient features. It is undisputed that the transfers from the loan company to the bank, which it is claimed by respondent were given as security, were absolute in form, and that both the bank's and the loan company's books evidenced purchases and sales, and not security transactions. The loan company was overdrawn in its account in the bank in a large sum when the first deed of transfer which is involved was made and delivered. Upon the receipt of such transfer and others of like kind, the loan company was credited with a deposit in the amount of the full value of the lands transferred, and which deposit more than paid the overdraft, leaving a credit balance subject to check. This is true of the subsequent transactions. Loans in this manner were made to the full value of the securities according to respondent's contention, and this without any record or documentary evidence by note, memorandum, or otherwise, showing the nature of the transaction. Fur-

thermore, Cooper, as cashier of the bank and secretary of the loan company, admits that he drew the deeds and made the entries in the books of both the loan company and the bank, showing upon their face absolute sales instead of security transactions. Not only this, but he, as such cashier, entered the lands so conveyed as property purchased by the bank, and as secretary of the loan company he made entries in its books showing that such land had been sold to the bank. Moreover, he, as cashier of the bank, repeatedly made reports, verified by his oath, to the comptroller of the currency listing these lands as the property of the bank, and stating that they were conveyed on or about the dates mentioned in the deeds in payment of prior indebtedness. He also listed these lands with the assessor as the property of the bank.

At the trial, he testified, among other things, as follows:

Q. You never made any settlement as to the interest or the amount due on those indebtednesses which you claim to be loans secured by these lands?

A. No, sir.

Q. Did you close up your books at the end of each fiscal year in that bank?

A. Yes, sir.

Q. And you took into consideration everything that you had in the way of bills receivable in that bank?

A. In a statement.

Q. Did you ever take into consideration any interest owing on these lands?

A. Not to declare a dividend on.

Q. You never did that?

A. No, sir.

Q. And the only thing in the nature of debt owing to the bank that was not kept a record of in this discount register was four overdrafts which were recorded daily in the individual ledger of the bank book?

A. Yes, sir.

Q. And these debts that you are now claiming were owing by the Land Company, is that right?

A. Yes, sir.

Q. So as a matter of fact there is only one thing that the bank book

did not have a record of as the debts owing to it and that is of the land company?

A. Yes, sir.

Q. You knew as cashier that under the laws of the United States and under your duty by the by-laws of that corporation that you were to keep correct accounts, did you not?

A. Yes, sir.

Q. And you knew that falsifying or making a false account in that bank was criminal?

A. Yes, sir.

Q. Did you not know that you were not keeping those records truthfully, if your entries as to these claims are now true?

A. Yes, sir.

Q. And you knew that at the time you were making that set of books?

A. Yes, sir.

Q. Your statement did show on the books that this property was actually owned by the bank?

A. Yes, sir.

Q. And the same is true with reference to the reports you made to the comptroller?

A. Yes, sir.

Q. And the reports you swore to?

A. Yes, sir.

Q. And that is true of the assessor's report?

A. Yes, sir.

Appellant in his testimony flatly disputes plaintiff's version as to the nature of these transactions, claiming that nothing was said about loans, and no loans were made, and that these land transfers were intended to be and were in fact absolute conveyances, and not given as security. He made the transfers for the loan company and swore positively that the transactions were exactly as the deeds of conveyance, the books of the loan company, and the bank, Cooper's reports to the comptroller, etc., showed them to be. By way of corroboration of appellant it was shown that certain lands other than those directly involved were transferred from the loan company to the bank at the same time and under like conditions as the lands in question, and that such other

lands were always treated as the absolute property of the bank and were sold as such at a large profit, and no accounting made to or asked for by the loan company. The foregoing is in brief the showing made by appellant in support of his contention that the transactions were not loans, but absolute conveyances. In opposition thereto Cooper testified that they were all loan transactions, and that the deeds were to the knowledge of appellant merely given as security for such loans. Cooper's testimony seems to be corroborated, not only by the books of the loan company and of the bank, but by proof of other similar transactions made at or about the same time, wherein the loans with interest were repaid and the lands reconveyed; also by the further proof that after such transfers the loan company was permitted to exercise dominion over the property by farming and improving some of it and by collecting rents and profits from other tracts. As before stated, the jury found in plaintiff's favor on all the issues, and such finding was upheld by the trial court. We are agreed that there is such a substantial conflict in the testimony as to preclude us from interfering with the finding of the jury on this question.

It is next contended that the evidence was insufficient to show that such securities were wrongfully released by defendants without first exacting payment of the interest earned on the loans. In paragraph seven of the complaint, plaintiff alleges a conspiracy between defendants to defraud the bank out of such interest by deliberately releasing such lands without collecting such interest, with the corrupt intention of perverting funds of the bank to their own use. The trial court held as a matter of law that no such conspiracy had been shown, and the action was dismissed as to defendant Messner, leaving Hilleboe as the sole defendant and appellant. We are therefore now to inquire whether there is sufficient evidence to warrant the jury in finding that Hilleboe thus wrongfully released the securities without exacting payment of interest due, and that plaintiff bank was thereby damaged in the amount assessed by the jury? We take it there can be no question regarding the personal liability to the corporation of an officer thereof for damages suffered by it on account of any wrongful or fraudulent misapplication or wasting of corporate funds or property caused by him. 2 Thomp. Corp. 2d ed. § 1421, and authorities cited in note. Indeed, it seems to be conceded, or at least not questioned by appellant's counsel, that lia-

bility exists for any damage shown, provided the deeds were given as security and appellant wrongfully released such security without exacting payment of the interest. Counsel say: "No matter how the bank held these lands, before the defendants could be held liable it was incumbent upon the plaintiff to show by a preponderance of the evidence that these defendants wrongfully released them. It has already been shown that Cooper, both on the bank books and in his reports to the comptroller of the currency, represented to the United States government that the bank owned these lands. The government, because of these representations, became dissatisfied with this condition of the bank. Believing that the bank did own these lands by virtue of the representations made, and thinking that the lands were lying in the bank as a dead weight, the government became dissatisfied with the conditions, and the bank examiner ordered that these lands be changed into active assets.

"Murphy, who was president of the bank, also told Hilleboe and Messner to get these lands out of the bank. He ordered them to transfer these lands for what they were carried on the books of the bank, and if they could not get that amount, to transfer them at a loss, but in any event to get them out of the bank.

"Hilleboe wanted Murphy to take the lands, but Murphy did not want them. Hilleboe testified:

" 'We talked about the lands and how to get rid of them, how to dispose of them, and told him it was hard to sell them, and we wasn't able to dispose of them, and we asked him if he wouldn't buy these lands, and he said he wouldn't, but he said, "you go to work and get rid of them somehow, and try to get out of them what they are carried on the books for." '

" 'The object was to dispose of this land and get either the money or bankable paper into the bank in place of it. We worked at that continuously from the time Murphy came there, I believe it was the first time he visited the bank, and at that time he had the biggest share of stock and he wanted to get it fixed up and cleaned up, so it was in bad shape, and he was very much opposed to all that land in the bank.'

"From the time that Murphy wanted these lands gotten out of the bank to the time they were actually transferred from it, the only stockholders or persons interested in the bank were Murphy and his wife, Hilleboe and his wife, and Messner. Cooper had no interest in the bank,

and was in no manner connected with it. Everything that was done was done with full knowledge of the persons interested.

"The evidence not only fails to show that the lands were wrongfully conveyed from the bank, but the testimony affirmatively shows without contradiction and beyond controversy that these lands were transferred from the bank under an arrangement with all of the persons then interested in it, and that everything that was done with reference to the lands in conveying them from the bank was done by these defendants in the utmost good faith. Not only has the plaintiff failed to show that the conveyance of these lands from the bank was wrongful on the part of these defendants, but the defendants have affirmatively shown that it was rightful, and that it was done at the request of both Murphy, who was president of the bank, and of Chapman, the bank examiner."

Respondent attempts to answer this argument by calling attention to the undisputed fact that no interest was paid on these various loans, but merely the principals of the loans were repaid to the bank, and his counsel says: "So that if we have established, and we feel that we have, that a contract was made as alleged, and that Hilleboe had notice of that contract and the lands were released, and in some instances not only released, but transferred to Hilleboe himself, no interest paid to the bank on the money advanced, although large profits were made upon the sale, then we have established beyond question that the lands were wrongfully released without the collection of interest."

Upon this question of alleged wrongful release of these lands by appellant without collecting interest due the bank, as well as the further question as to plaintiff's alleged failure to prove any resulting damage to the bank, we have had no little difficulty in reaching a conclusion. The testimony on this first point is very meager and of a highly unsatisfactory nature. The writer was at first quite strongly inclined to the view that we would not be justified in reversing the judgment on either of these points. These views, however, were not shared in by his associates, and in deference to the majority the writer feels constrained to recede from his first impressions. We are now agreed that, while it appears that such interest was never collected for the bank, there is no proper basis in the evidence for the jury's findings to the effect that such securities were by appellant wrongfully released, as alleged by respondent, or that such bank suffered any resulting damage thereby which it is

entitled to recover. In brief, we are in full accord with the contentions of appellaut's counsel on these points.

Having arrived at the above conclusion, it becomes unnecessary to notice the specifications of error based upon rulings at the trial and the instructions of the court to the jury, further than to state that the ruling denying appellant's motion for a directed verdict was erroneous, and we feel constrained not only to reverse the judgment, but we deem it a proper case under the provisions of Compiled Laws, § 7643, to direct judgment to be entered in appellant's favor. It is accordingly so ordered.