JAMES L. LOMBARD, Appellee, v. CARRIE GREGORY *et al.*, Appellants.

| 81 | 569 |
| 86 | 542 |

| 81 | 569 |
| 88 | 432 |

1. **Usury**: MORTGAGE. The retention by a lender of the sum of twenty-one dollars out of a loan of seven hundred dollars, evidenced by a note providing for the highest rate of interest allowed by law, will render the contract usurious.

2. ————: FORECLOSURE OF MORTGAGE: DECREE. In an action upon a note tainted with usury, and for the foreclosure of a mortgage given to secure the same, the payee will be entitled to judgment for the amount of the principal only, less the sum of all payments upon such usurious contract, and to a decree for the enforcement of his mortgage to such extent only.

3. ————: FORFEITURE TO SCHOOL FUND. Where usury is established in an action upon any contract, judgment will be rendered against the borrower, in favor of the school fund, in a sum equal to ten per cent. per annum upon the amount of the principal sum loaned, less the sum of all payments made under the contract.

*Appeal from Montgomery District Court.*—HON. A. B. THORNELL, Judge.

SATURDAY, NOVEMBER 29, 1890.

THIS is an action for the foreclosure of two mortgages upon certain real estate. There was a decree for the plaintiff, and defendants appeal.

*Carrie Gregory* and *H. R. Gregory*, for themselves.

*D. H. Ettien* and *Smith McPherson*, for appellee.

ROTHROCK, C. J.—I. On the twenty-second day of January, 1884, the defendants executed two mortgages to the plaintiff, to secure the payment of seven hundred dollars. One of the said mortgages was for the sum of seven hundred dollars, with interest coupons attached to the notes secured by the mortgage, by which defendants bound themselves to pay seven per cent. per annum interest in semi-annual installments. The other mortgage was for the

1. USURY: mortgage.

same loan, and represented three-per-cent. interest on the seven hundred dollars, so that the aggregate amount of interest which appeared to be contracted for was ten per cent. per annum. The defendants reside at the town of Villisca, where the mortgaged property is situated. Carrie Gregory appears to have been the owner of the property. The defendants were in debt, and there were liens upon the property and taxes due amounting to several hundred dollars. They were in urgent need of money, and applied to one Woodward, a resident of Villisca, to procure a loan for them. They executed a paper by which they agreed to pay Woodward a commission of twenty-five dollars if he should procure a loan of eight hundred dollars upon a mortgage upon the property. Woodward made an application to the plaintiff who caused an examination of the property to be made, and declined to make a loan in excess of seven hundred dollars. An additional loan was procured from another party, which was secured by a chattel mortgage. The two loans appear to have been sufficient to meet the requirements of the defendants.

It was provided in the mortgages to the plaintiff that they should become due if default at any time be made in the payment of interest on the loan, and it appears quite satisfactorily that such default occurred. The defendants set up the defense of usury. They also filed a cross-bill against said Woodward, and demanded an accounting of the money Woodward had received from Lombard for the notes and mortgages. And the additional loan of another party is attempted to be introduced in the case. It is unnecessary to further advert to these matters. The case was not one demanding an accounting. It was wholly unnecessary, and Woodward was neither a proper nor necessary party. He was the agent of the defendants in procuring the loan, and the plaintiff was not required to account for the money loaned. The defendants intrusted the disbursement of the money to Woodward, and had no

right to delay the foreclosure or embarrass it by a controversy between them and Woodward.

The only real question in the case is, was the contract, as between Lombard and the defendants, usurious? If the evidence shows that Lombard exacted any amount in excess of ten per cent. per annum, it was usurious. The evidence upon this question is not at all voluminous. It appears that the money was sent by draft by Lombard to Woodward, payable to the order of Carrie Gregory, with instructions that all liens must be removed from the property before the transaction was closed. Woodward paid off the liens with the proceeds of the draft, and with the money received on the chattel mortgage, and, on the sixth day of February, 1884, he rendered an account to Carrie Gregory, of which the following is a copy:

"Carrie Gregory in account with W. A. Woodward, 1884.

| | | | | |
|---|---|---|---|---|
| Feb. 6 | F. P. Greenlee | $243 00 | By Lombard draft.. | $680 00 |
| " " | W. H. Redmon | 338 84 | Feb.   Treasurer.... | 7 00 |
| " " | M'tg recording | 1 50 | Feb. 6.   By note and | |
| " " | 1 25 | | m'tg | 150 81 |
| | Redeem tax sale | 30 75 | | |
| | Tax up to 1883 | 47 14 | | $837 81 |
| | Commission to Lombard.. | 21 00 | | |
| | C. P. Squires | 110 00 | | |
| | Commission | 25 00 | | |
| | Commission on short loan to Royston | 8 33 | | |
| | Recording m'tg | 1 50 | | |
| | Making m'tg | 2 00 | | |
| | | $830 31 | | |
| Feb. 6 | By commission on $150.81 | 7 54 | | |
| | | $837 85 | | |

"Received the above of W. A. Woodward, as our agent, in full this February 6, 1884.

"H. R. GREGORY,
"CARRIE GREGORY."

Now, while it is true this is an account rendered, and a settlement between Woodward and Carrie Gregory and her husband, yet the record before us shows that the plaintiff introduced it in evidence over the objection

of the defendants. It plainly appears therefrom that Lombard sent a draft for six hundred and eighty dollars, and retained a commission of twenty-one dollars, and this settlement was made some two weeks after the mortgage for seven hundred dollars was executed, delivered and recorded. The very fact that the draft was made for six hundred and eighty dollars, instead of for seven hundred dollars, shows unmistakably that Lombard took obligations from the defendants for the payment of the full amount of seven hundred dollars and ten per cent. per annum interest, and that he exacted an additional sum of twenty dollars or twenty-one dollars. The only evidence tending to contradict this statement is the testimony of Lombard, in which he admits that the draft was for the sum of six hundred and eighty dollars, but that afterwards the additional sum of twenty dollars was sent. His testimony upon this point in the case is as follows : "The application having been received, and the property examined, and deemed sufficient security for a loan of seven hundred dollars by a representative whom I sent from our Creston office, and the abstract of title submitted and passed on, the papers, namely, the notes and mortgages, were sent to Villisca to Mr. Woodward, as being the representative of defendants, that defendants might execute the same, and return them to me. A draft for the amount of the loan, less twenty dollars, was forwarded payable to the order of defendants, with instructions that it was to be delivered to the defendants when the incumbrances in the abstract had been removed, and when our mortgage had been filed for record, and the notes which the mortgage secured returned to me. Shortly after, the twenty dollars additional was sent, thus completing the full payment to the defendants of the seven hundred dollars."

This is all the evidence there is upon this question. Whether the additional twenty dollars was received by Woodward does not appear. It would seem, from his statement of account and settlement with the defendants, that it had not been received on the sixth

day of February, 1884, and there is no evidence that the defendants ever received it. The evidence shows that in the whole transaction they did not receive any money. It was all applied to the payment of liens and charges against the property. The mortgages were recorded on the twenty-fourth day of January, 1884. It will thus be seen that if Lombard paid the twenty dollars it was after the usurious contract was fully completed and in force, so far as it could be made operative by the acts of the parties. Another thought is of controlling importance. If Lombard did not intend to exact the twenty dollars in addition to the lawful rate of interest, why did he send a draft for six hundred and eighty dollars, and then in a "short time" make another payment of twenty dollars? This is contrary to all business methods, and Lombard is a business man. He testified, as a witness, that he is, by occupation, a money-lender, and it would seem to be important that he should have shown when he sent the additional twenty dollars, so that it might appear that both payments were parts of the same transaction.

II. It only remains to determine the amount to which the plaintiff is entitled to a judgment and decree of foreclosure. It is provided by statute that if it shall be ascertained on any suit brought on any contract that a rate of interest greater than ten cents on the one hundred has been contracted for, directly or indirectly, the plaintiff shall have judgment for the principal sum without interest. Code, secs. 2079, 2080. And, when payments have been made upon a usurious contract, such payments shall be applied as credits upon the amount legally due. *Smith v. Coopers*, 9 Iowa, 376. The amount of principal in this case was six hundred and eighty dollars, and the evidence shows that when this action was commenced the defendants had paid one hundred and twenty-three dollars and ninety-one cents thereon. The balance due the plaintiff is five hundred and fifty-six dollars and nine cents, for which the plaintiff is entitled to judgment and a decree of foreclosure.

2. ——: foreclosure of mortgage: decree.

III.   It is further provided by statute that, in an action where usury is established, the court shall render judgment against the defendants, in favor of the school fund, for the amount of interest forfeited by the illegal contract, and that the forfeiture shall be ten cents on the one hundred by the year; and, where payments have been made upon a usurious contract in rendering judgment against the borrower in favor of the school fund, the amount upon which the interest should be computed should be ascertained by deducting the payments from the whole sum loaned.   *Sheldon v. Mickel*, 40 Iowa, 19.   Following this rule the judgment against the defendants in favor of the school fund will be for ten per cent. per annum on five hundred and fifty-six dollars from January 22, 1884.   The plaintiff will not be allowed to recover costs nor the attorney's fees provided for in the notes. *Miller v. Gardner*, 49 Iowa, 234.   The judgment and decree of the district court is REVERSED.

3. ——: forfeiture to school fund.