**STATE of Iowa ex rel. Richard C. TURN-ER, Attorney General of Iowa, Appellant,**

**v.**

**YOUNKER BROTHERS, INC., Appellee.**

**No. 55622.**

Supreme Court of Iowa.

Sept. 19, 1973.

Rehearing Denied Nov. 9, 1973.

Richard C. Turner, Atty. Gen., and Harry M. Griger, Asst. Atty. Gen., for appellant.

John G. Fletcher and Bennett A. Webster, Des Moines, for appellee.

MASON, Justice.

The ultimate question presented by this appeal is whether credit sales between Younker Brothers, Inc. (Younkers), defendant in this action, and its customers result in usury prohibited by Iowa statutes.

Since 1965 Younkers, a retail department store doing business throughout Iowa with its principal place of business in Des Moines, has extended to persons who purchase its merchandise consumer credit through the use of a typical revolving (option) charge plan that operates as follows: the customer and Younkers enter into an agreement which permits the customer to make further credit purchases for an indefinite period of time without the necessity of entering into a new contract at the time of each purchase. If the customer decides to charge an item, rather than make an immediate payment of the cash price, he merely presents his charge card or plate to the sales clerk and signs the credit slip. The transaction is then recorded on the customer's account in accordance with the terms of the pre-existing agreement. The customer can avoid any "finance charge" on the price of the purchase by paying the full cash price within thirty days after billing. However, at the expiration of that period the unpaid amount of the cash price is added to the previous balance of the customer's account to arrive at an unpaid balance on which a "finance charge" of $1\frac{1}{2}$ percent is assessed. Payments made on the account and credits for returned merchandise are deducted from the unpaid balance and purchases made during the current billing period are not considered in determining that month's balance. Younkers mails the customer a monthly statement of his account and he must pay a minimum amount of $10 or ten percent of the unpaid balance, whichever is the greater, for that month. As long as the customer makes such payments he or she could continue to make purchases on the revolving charge plan and continue to be assessed by and pay to Younkers the "finance charge." Hence, a customer paying such a monthly "finance charge" may be assessed 18 percent annually, which is well above the maximum rate permitted as an "interest" charge under the Iowa usury laws.

Another type of credit agreement primarily used by Younkers and its customers for the purchase of single, more expensive items of merchandise such as TVs, major appliances or furniture is the retail installment contract. In retail installment sale transactions the customer enters into a specific written contract for a particular item or items and agrees to pay the unpaid portion of the cash price and an additional "finance charge" of $9.00 per $100 per year of the unpaid cash price, within a specified period of time between three and thirty-six months after the date of purchase. The resultant charge is equivalent to 16.25 percent annually, which is also greater than the maximum permissible "interest charge" under our usury laws. In the event the customer would pay in advance the unpaid balance of the installment contract Younkers would give a partial refund based on a fixed formula to the customers of the finance charge. Although Younkers does not have the right to accelerate the payment of the monthly installments based on the unpaid balance plus the "finance charge," it does retain property rights in the goods sold, together with all of the concomitant rights accorded a seller under the Uniform Commercial Code, chapter 554, The Code.

The retail installment contract has been used by Younkers for a number of years.

Plaintiffs, State of Iowa on the relation of Richard C. Turner, its attorney general, and Richard C. Turner in his individual capacity, initiated this proceeding as a class action to have Younkers' two credit plans declared usurious for the reason both exacted an "interest" charge in excess of the rate permissible under sections 535.4 and 535.2, The Code, 1971.

Section 535.4 provides:

"Illegal rate prohibited—usury. No person shall, directly or indirectly, receive in

money or in any other thing, or in any manner, any greater sum or value for the loan of money, or upon contract founded upon any sale or loan of real or personal property, than is in this chapter prescribed."

And section 535.2 reads in part as follows:

"Rate of Interest.

"1. * * * [T]he rate of interest shall be five cents on the hundred by the year in the following cases, unless the parties shall agree in writing for the payment of interest not exceeding nine cents on the hundred by the year:

"a. Money due by express contract.

"* * *.

"f. Money due upon open accounts after six months from the date of the last item."

In Weinrich v. Hawley, 236 Iowa 652, 659, 19 N.W.2d 665, 669, the court defined interest as "the compensation fixed by the parties or allowed by the law for the use of money, or as damages for its detention." See also Iowa Loan Co. v. Matthews, 126 Iowa 743, 102 N.W. 817 and Smith, Twogood & Co. v. Coopers & Clarke, 9 Iowa 376.

45 Am.Jur.2d, Interest and Usury, section 1, has this definition: "Interest is the compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money or its equivalent."

Interest is also defined in 47 C.J.S. Interest § 1, as, "* * * the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention."

Plaintiffs alleged Younkers' conduct constituted a public nuisance and sought to enjoin the company from selling goods under either the revolving charge account or the retail installment contract; to "recover judgment against defendant in a sum equal to all interest and finance charges illegally imposed on defendant's customers since May, 1969"; to impose a constructive trust upon the judgment and customers' money in Younkers' hands, and to credit payments of all usurious interest made by each customer to his or her principal due under said customer's contract or open account with Younkers. All allegations concerning a class action, recovery of alleged usurious interest and credit for all usurious interest paid were stricken from plaintiffs' amended petition by the trial court. Younkers answered that its "finance charge" as calculated under both credit plans was a time-price differential and not subject to the usury statutes.

The trial court rejected plaintiffs' contentions and denied their request for injunctive relief. In deciding the annual "finance charge" of 16.25 percent under the retail installment contract is not usurious, the court found the Iowa supreme court in Gilmore & Smith v. Ferguson & Cassell, 28 Iowa 220 (1869), amended the language of the operative usury statute to include the time-price doctrine, which generally exempts sales of goods from the application of usury statutes. The court further held the revolving charge account plan does not violate the usury laws, as it too is exempt under the time-price doctrine.

Plaintiffs have appealed asserting three issues for review: (1) the trial court incorrectly held that Younkers' revolving charge option account and retail installment contracts are not usurious under chapter 535, Code of Iowa, 1971; (2) Younkers' violations of the Iowa usury law constitute a public nuisance which should be enjoined; and (3) the trial court incorrectly held that plaintiffs' petition and three amendments thereto failed to state a proper class action for the recovery of past payments of usurious interest.

I. Plaintiffs urge three principal contentions as their first issue for review: (a) the time-price doctrine does not obtain in Iowa in light of the language of section 535.4, supra; (b) assuming the time-price

doctrine is in force, neither of Younkers' credit plans effects a bona fide time-price sale of property; and (c) an intention to violate the usury laws, one of the essential elements of a usury, is present in the instant case.

*(A) Construction of section 535.4, The Code.*

 The common law has never forbidden the exaction of usury as a matter of general law, and at the present time any rate of interest agreed upon by the parties is legal in the absence of statute. 45 Am. Jur.2d, Interest and Usury, section 4. However, most states have enacted statutes regulating the matter of interest, which generally have been construed to define usury as consisting of four essential elements: (1) a loan or forbearance, either express or implied, of money or of something circulating as such; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law. *Id.* at section 111.

Specifically, the first element indicates the kind of conduct or transaction commonly regulated by usury statutes. It is plaintiffs' belief section 535.4 applies not only to the loan or forbearance of money but also explicitly pertains to any credit sales transaction, whether the customer utilizes a revolving charge account or a retail installment contract. Plaintiffs focus on the specific reference in section 535.4 to contracts for the sale of goods, viz., "or upon contract founded upon any sale or loan of real or personal property."

Younkers argues the precise contention raised by plaintiffs was expressly rejected by this court over 100 years ago in Gilmore & Smith v. Ferguson & Cassell, 28 Iowa 220 (1869), which involved a contract to buy 196 sheep valued at $588. That amount was to be paid within one to four years. But the buyer was also required to pay one and a half pounds of wool per head annually until he paid the sale price. After the third year, the buyer refused to deliver the annual amount of wool and the seller instituted the lawsuit. The trial court held the contract violated the usury statute then in force, which was virtually the same as the present enactment and read as follows: "No person shall, directly or indirectly, receive in money, goods or things in action, or in any other manner, any greater sum or value, for the loan of money, or upon contract founded upon any bargain, sale or loan of wares, merchandise, goods, clothing, lands and tenements, than is prescribed by this act."

This court, however, could not accept the trial court's reasoning, stating that one may sell his property for a much higher price on credit than he would for cash. Because of the emphasis placed on the *Gilmore* decision by Younkers, the opinion is quoted at length:

"Upon the contract itself (aside from any evidence tending to show usury), there can be no serious claim made that it is usurious. Nor would the proof that the pound and a half of wool was worth, at the time of delivery each year, more than legal interest upon the value of the sheep, make the contract usurious; for, since its value was uncertain and might be less than legal interest, the fact that it was more would not make it usurious; and this, although the pound and a half of wool for each sheep may have been stipulated for as interest, as the jury have found. That is to say, one man may rightfully sell his property to another for a certain sum in money down; or he may ask and receive a much larger sum on condition it is not paid for till a future day, and the fact that the increased price payable at a future day was more than the legal interest on the cash price, would not make the contract usurious. In other words, the owner of property may sell it for such price as he can get, either in cash down or payable at a future day, and although the price payable at the future day may be twice or thrice as much as the down price or as many per

cent per month more than it, yet this will not make it usurious. The reason is, that such contracts are not within the statute against usury. Of course, if such contracts are resorted to as a cover for usury —to evade the usury laws—they will be held usurious. But the jury did not so find in this case. * * *

"Some question is made by appellee's counsel upon the phraseology of our statute, as being different from the original statute of Anne and of the other States from which the decisions above are cited. But since the jury found that the price agreed by the contract to be paid was the actual value of the sheep, and since the contract is not, upon its face, usurious, and the jury have failed to find that the contract was a device to evade the usury laws, or as a cover for usury, it becomes immaterial to examine the difference, even if there is any legal effect, between our statute and those referred to, for in either view the contract upon the findings cannot be held usurious." *Id.* at 223–224.

In the case before us the trial court gave this appraisal of *Gilmore*: "The effect of the Gilmore case on chapter 535.4 is to amend the language of the statute so as to state it as if the language of the court in the Gilmore case was plainly written into the usury statute." Accordingly, the court concluded the time-price doctrine was judicially, if not legislatively, recognized as part of our usury law. But see, Hill v. Rolfsema, 226 Iowa 486, 284 N.W. 376; First National Bank of Marshalltown v. Owen, 23 Iowa 185 (Buyer agreed to pay seller not only purchase price but in addition two pounds of wool per head for two years; the court held the value of the wool "was necessarily fluctuating, and could not, at the making of the contract, be well estimated. We concede that *a contract of like terms might be shown to be usurious.* But it is not necessarily so." Emphasis supplied); Casady v. Scallen, 15 Iowa 93, 95 ("There is no necessary usury in such a contract.") *See also* Conrad v. Gibbon, 29 Iowa 120.

Wef of our decisions have dealt with the problem presently under consideration, i. e., the viability of the time-price doctrine in Iowa. Certainly none has any conclusive precedential value. In Royal Zenith Corporation v. Citizens Publications, Inc., 179 N.W.2d 340 (Iowa 1970), a printing press was purchased for a "time-price" under the terms of a conditional sale contract. Yet, neither the time-price doctrine nor the usury statute was mentioned by the parties or the court. And the "finance charge" included in the "time-price" of an automobile, as provided by the legislature in chapter 322, The Code, is authorized "notwithstanding the provisions of any other existing law * * *."

On the other hand, in In re Estate of Zimmerman, 160 N.W.2d 502 (Iowa 1968), a grain elevator sought to recover an amount owed for feed, grain and grinding. Included in the amount was a "service charge" of one percent per month. This court affirmed the trial court's ruling disallowing the "service charge," but providing for an interest rate within the limitations of sections 535.2 and 535.4, The Code.

■ Clearly, it is within the legislature's power to apply the usury statutes to credit sales, thereby negating the time-price doctrine. See 45 Am.Jur.2d, Interest & Usury, section 123 which provides:

"Although there are decisions to the contrary, necessitated in some jurisdictions by applicable statutes, it is the established general rule, * * * that an owner of property, whether real or personal, may offer to sell at a designated price for cash or at a higher price on credit, and that a credit sale at an advanced price will not constitute usury, however great the difference between the two prices, so long as it appears that the price charged is in fact fixed for the purchase of goods on credit with no intention or purpose of defeating the usury laws."

The following observations cast considerable doubt on the assertion by Younkers

and the trial court that the *Gilmore* opinion amends our usury statute to include the time-price doctrine:

" \* \* \* The cases cited in support of this construction were from jurisdictions where the wording of the usury statute was not the same as the Iowa statute, but the court considered the difference immaterial. The court also thought the value of the wool could not make the contract usurious because that value was uncertain and could be more or less than the legal interest. In view of the unusual features of the case, the failure of the majority opinion to discuss the difference in the wording of the Iowa statute as compared with other states, and the persuasive dissenting opinion, this case cannot be taken as final authority for the proposition that an excess of the credit price over the cash price cannot constitute usury in Iowa." The Iowa Usury Statute and Sales on Credit, 1 Drake L.Rev. 63, 65–66.

In discussing the *Gilmore* case, it was noted:

" \* \* \* Although no usury was found in the \* \* \* [Gilmore] case because the extra charge was paid in wool which had an unpredictable value, the inescapable conclusion would seem to be that if, as in a usual credit sale, the added payment had been in money, the credit sale would have been held to be usurious." Note, Usury Statutes: Their Applicability to the Credit Sale Followed by an Assignment to a Lending Agency, 43 Iowa L.Rev. 87, 93.

It would appear the latter comment reveals the limited import of the *Gilmore* decision. Also, both *First National Bank* and *Casady,* supra, suggest contracts for the sale of personal property could be usurious.

Attention is also directed to this statement in Callanan v. Shaw, 24 Iowa 441, 452–453 (1868), where the court said:

"The language of section 1791 of the Revision, which provides the penalty for violations of the law regulating interest, can, by no reasonable construction, be applied to contracts for the loan of money or property only; it applies to any contract of purchase or sale of property wherever an unlawful rate of interest is provided for, as well as to contracts for loans."

It is interesting to note that the author of the opinion in *Callanan* wrote the dissent in *Gilmore.*

The time-price doctrine generally accepted by nearly all state courts was recognized as the established rule in Hogg v. Ruffner, 66 U.S. (1 Black) 115, 17 L.Ed. 38. In *Hogg* the defendant executed nineteen promissory notes in payment of a parcel of land he had contracted to buy. When sued in an Indiana federal court on several of the notes, the defendant raised the defense that the contract was usurious and therefore unenforceable. The applicable Indiana statute declared that "the rate of interest upon the loan or for the forbearance of any money, etc., shall be at the rate of six" percent. The defendant's argument that the difference between the cash price and the credit price under the contract constituted interest and as such was usurious was sustained by the lower court. The United States Supreme Court, however, held the contract was not usurious and reversed the decision.

"To constitute usury, there must either be a loan and a taking of usurious interest, or the taking of more than legal interest for the forbearance of a debt or sum of money due.

" \* \* \*

" \* \* \* [I]t is manifest that if A propose to sell to B a tract of land for $10,000 in cash, or for $20,000 payable in ten annual installments, and if B prefers to pay the larger sum to gain time, the contract cannot be called usurious. A vendor may prefer $100 in hand to double the sum in expectancy, and a purchaser may prefer the greater price with the longer credit. \* \* \* Such a contract has none of the characteristics of usury; it is not for the

loan of money, or forbearance of a debt." *Id.* at 118–119, 17 L.Ed. at 39.

Thus, the Court reasoned that, as a sale of property on credit was neither a loan nor forbearance of money, the sales transaction was not within the scope of the Indiana usury statute, even though the credit price exceeded the cash price by a greater percentage than the legal rate.

The Montana court has expressed the view that, "perhaps the best summary statement of the time price doctrine is found in the following statement from 6 Williston, Contracts, § 1685, (Rev.Ed. 1938):

" 'The statute of Anne applied only to a loan or forbearance of money, and in the construction of this statute it was held that where property was sold, even though the contract provided in terms for the payment of a fixed price payable in the future with interest at a greater rate than that allowed by the statute, the transaction was, nevertheless, not usurious since everything the buyer promised must be deemed consideration for the sale of property, not interest on a loan or forbearance of money. In the United States like statutes have been similarly construed, so that where property is sold the parties may agree that the price, if paid after a certain time, shall be a sum greater by more than legal interest than the price payable at an earlier day; and though the difference between an agreed price for cash and that for credit is in terms stated in the form of interest at greater than the legal rate, the contract is not usurious.' " Cecil v. Allied Stores Corporation, Mont., 513 P.2d 704, 708 (1973).

The foregoing statement is repeated in substance in 14 Williston on Contracts, Third Ed., section 1685.

In the present case the trial court relied on the foregoing doctrine in determining the two customer credit plans under attack were time-price sales and hence were not within the usury statutes.

The majority of jurisdictions that have considered the matter have concluded that a bona fide sale of goods on time is not subject to the usury statutes even though the differential between the credit price and the cash price exceeds the maximum interest rate permitted under the usury laws. Recent examples of such decisions are collected in Cecil v. Allied Stores Corporation, 513 P.2d at 708.

However, those cases which include State v. J. C. Penney Co., 48 Wis.2d 125, 179 N.W.2d 641; Rollinger v. J. C. Penney Company, 192 N.W.2d 699 (S.D.1971); Kass v. Garfinckel, Brooks Bros., Miller & R., Inc., 299 A.2d 542 (D.C.App.1973), and Standard Oil Company (Indiana) v. Williams, 288 N.E.2d 170 (Ind.App.1972), were decided under statutes which did not expressly refer to credit sales.

The decisions of various state courts have continually referred to the time-price doctrine as an "exception" to the usury statutes. It would seem the proper interpretation of the rule as enunciated in *Hogg* is simply that a sale of goods or property is not usurious for it is not a loan or forbearance of money as required by their usury statutes.

Plaintiffs have included in their brief and argument a compiled list of the general usury statutes in the various states and jurisdictions in the United States. Massachusetts, Maine, New Hampshire and Wyoming have no general usury statutes as such. Massachusetts (Ann.Laws of Mass. Ch. 107 § 3, § 78, § 90, § 96, § 104) allows any rate of interest on an agreement, but regulates interest pursuant to its small loan statutes and licenses small loan companies. Maine (9 M.R.S.A. § 3081) also has a small loan act and licenses small loan companies. New Hampshire (N.H.R.S.A. 336:1, 399–A:3, 4) allows an interest rate in any amount if expressed in writing and regulates interest on small loans. Wyoming (§ 13–477 W.S.) allows, by agreement of the parties, any rate of interest.

The usury statutes of virtually all other states require proof of a loan or forbearance, either expressed or implied, of money to establish a usurious transaction and as indicated do not expressly refer to credit sales; consequently, the judiciary of those states readily acknowledged the court's conclusion in *Hogg*.

The only jurisdictions which now expressly cover the sale of property in the usury law are Iowa, Alaska and the Virgin Islands. No usury cases from either Alaska or the Virgin Islands have been brought to our attention.

The Iowa statute is more explicit than most. It provides, in addition to the usual provisions regarding a loan of money, that no more than the prescribed "sum or value" shall be received "upon contract founded upon any sale or loan of real or personal property." 1 Drake L.Rev. 63. This statute does not differentiate between the seller of property and the lender of money, a distinction upon which the time-price doctrine rests.

For this reason all the cases mentioned and cited, although helpful, are not exactly in point even though some concern credit plans substantially identical to those offered by Younkers.

In order to construe code section 535.4 as the *Gilmore* court did its predecessor it would be necessary that the words, "or upon contract founded upon any sale or loan of real or personal property" be stricken from the present statute. Thus amended the statute would read: "Illegal rate—prohibited usury. No person shall, directly or indirectly, receive in money or in any other thing, or in any manner, any greater sum or value for the loan of money than is in this chapter prescribed."

The rationale of the *Gilmore* decision has not been considered by this court in any later case involving the sale or loan of property so far as we have been able to find. In our view the opinion fails to employ the familiar fundamental rules of statutory construction set out in Janson v. Ful-

ton, 162 N.W.2d 438, 442–443 (Iowa 1968); Davenport Water Co. v. Iowa State Commerce Com'n, 190 N.W.2d 583, 594–595 (Iowa 1971); In re Estate of DeVries, 203 N.W.2d 308, 310 (Iowa 1972), and should not be adhered to.

As stated, the trial court here relied on *Gilmore* decided in 1869 in determining Younkers' revolving charge account and retail installment contract were a part of the time-price exemption to the usury law. In reaching this conclusion it felt bound by that decision and its acceptance throughout more than 100 years by the legislature. Perhaps the trial court had in mind the statement once made in a case arising in Johnson County where the author of the opinion said, "If our decisions are to be overruled we prefer to do it ourselves."

Nevertheless, the effect of the trial court's reliance on *Gilmore* is to also amend the statute, not by deleting a portion thereof, but by adding the phrase (or one similar), "provided however such limitation shall not apply to any contract for sale of property on credit." Such process is subject to the same shortcoming—it fails to recognize the fundamental rules of statutory construction.

■ As pointed out, there are some striking differences between the revolving charge account transaction and the retail installment contract. Still, code section 535.4 expressly includes contracts founded upon *any* sale or loan of real or personal property. This plainly means the statute governs contracts for the sale of property whether such contract embodies the characteristics of a revolving charge account transaction or an installment contract. The trial court erred in holding otherwise. Insofar as the pronouncements in *Gilmore* are inconsistent with the foregoing determination, that case is overruled.

*(B) Existence of the Elements of Usury*

II. The four essential elements of usury, each of which must exist in a transac-

tion before it can be labeled usurious, have already been set out in this opinion.

Usury, which originally meant simply interest for the use of money, has now come to mean excessive interest. 14 Williston on Contracts, Third Ed., section 1682.

There is no argument as to the existence of the second element—an understanding between the parties that the principal shall be repayable absolutely.

Therefore, we turn to the third element—the exaction of a greater profit than is allowed by law.

In this equitable proceeding our review is de novo. Rule 334, Rules of Civil Procedure.

Plaintiffs would have the court reject any effort to justify either the 18 percent or 16.25 percent annual interest rates as merely a "service charge" by Younkers to recover its reasonable credit costs. The evidence established the cost of providing Younkers' customers with credit service exceeded the income derived from the finance charges under both credit plans. Accordingly, the trial court noted in its findings of fact that the "evidence supports the argument of Younkers that the 'finance charge' is not all excess profit, but goes to cover expenses incurred in connection with the revolving charge account". There is no indication the court considered this finding in arriving at its decision. Nevertheless, plaintiffs assert, "the court found that one of the elements of usury, namely, receipt of a greater profit than allowed by law, was lacking."

Plaintiffs argue the finance charges assessed by Younkers on both the revolving charge plan and the retail installment contract are not specific charges for specific services rendered its customers in making, arranging, servicing and collecting for the sale of goods on credit but constitutes interest in its entirety.

Younkers on the other hand maintains it is entitled to recover its reasonable costs of providing credit services; even if a portion of the finance charge is considered interest such portion does not exceed nine percent per annum.

Younkers offered evidence of a study made of its credit activities which disclosed its cost of providing credit service exceeded its finance charge revenue by $574,000.00 per year. In response to a question on cross-examination as to why Younkers continued to extend credit if the two types of credit arrangements cost the company such an amount, one witness expressed the view the additional merchandising profit which is contributed because credit is afforded has to offset this deficiency. No study had been made of any benefits which might have been derived from the credit operation.

■ This court has recognized that a lender in addition to the highest rate of interest could charge a reasonable fee for services rendered such as for title examinations, recording fees, travel and commission expenses and credit reports provided such charges are for specific services and are in a reasonable amount. Ordinarily, these sums are not retained by the lender but are paid to others. Smith v. Wolf, 55 Iowa 555, 8 N.W. 429; Iowa Savings & Loan Assn. v. Heidt, 107 Iowa 297, 77 N.W. 1050; Annot., 21 A.L.R. 797, 871, supplemented in 53 A.L.R. 743; 63 A.L.R. 823; 105 A.L.R. 795.

However, Younkers' expenses incident to operation of its credit plans bear no relation to the computation of or amount of the alleged "service charge." The finance charges do not vary, but the revolving account and the retail installment account always remain 18 percent and 16.25 percent respectively. No matter what the unpaid balance of a revolving charge account or retail installment contract, the finance charge is based on the balance, not the costs of the services.

The cost of servicing a large unpaid balance should not be significantly greater

than the cost of servicing a much smaller account and thus a fixed rate should cover the store's cost in both instances. In other words, if the alleged "service charge" (since Truth-in-Lending designated "finance charge") assessed were in fact a true charge only for the servicing of the account, one would expect such charges to be approximately the same regardless of the balance remaining. The only variable which would tend to make costs rise for a larger account relates to the fact the retailer must build a reserve for bad debts and subsequent losses.

To sustain Younkers' contention would require this court to approve a procedure whereby the seller of property on credit adds as a finance charge a set percentage of the amount of the sale as a blanket fee to cover indefinite expenses, some of which are certainly a part of the retailer's normal overhead, where that fee plus the rate of interest exacted exceeds the maximum interest permitted by statute. This we decline to do.

■ Our de novo review compels the conclusion that Younkers did exact a greater profit for its credit plans than the nine percent permitted by section 535.2, The Code. The third essential for usury is present here.

III. A loan or forbearance of a debt, the first enumerated essential element, must also be shown to exist in order to prove a transaction usurious. Therefore, our next problem is to determine whether there was forbearance of a debt in the credit plans offered by Younkers; and, if so, whether the Iowa usury law covers forbearance of a debt.

■ Forbearance, in this sense, has been defined as, "an act by which creditor waits for payment of debt due him by debtor after it becomes due. * * * Within usury law, term signifies contractual obligation of lender or creditor to refrain, during given period of time, from requiring borrower or debtor to repay loan or debt then due and payable." Black's Law Dictionary 773 (rev. 4th ed. 1968). Citing Hafer v. Spaeth, 22 Wash.2d 378, 156 P.2d 408, 411.

It has also been said that "forbearance," as used in usury statute, simply means that the person to whom money is owed waits for all or part of the money after the consummation of the contract in which the money is involved, or that the seller foregoes payment in cash and waits for all or part of his money. Sloan v. Sears, Roebuck and Co., 228 Ark. 464, 308 S.W.2d 802, 804.

■ However, Younkers contends a sales agreement can never constitute a forbearance. We do not agree. Certainly, the purchase of property creates an obligation to pay for it.

"A close analysis of the definition of 'forbearance' reveals that the term can be made to apply to a credit sale. Did not the buyer incur a money debt by his purchase? Did not the seller-creditor refrain from collecting the money debt for a specified time? Therefore, the courts could have categorized a credit sale as a forbearance by the seller to collect the cash-price from the buyer. Note, the Penney Decision and Revolving Charge Accounts, 54 Marq.L.Rev., 223, 224.

The author of the note, Service Charges for Revolving Charge Accounts: A Time-Price Exemption or Usury?, 71 Colum. L.Rev. 905, 908–909, tells us:

"It should be noted that a debt incurred in the purchase of goods may become subject to usury statutes, if, for example, by its terms the debt or final payment becomes due and the seller agrees to forbear collection in return for additional consideration. Indeed, this possibility was considered in Hogg v. Ruffner [66 U.S. (1 Black) at 118]:

" 'The original contract by which a debt is created may be for the purchase and sale of land, and it will be, nevertheless, contrary to the [usury] statute for the

vendor to demand or receive more than legal interest for the forbearance of such debt * * *.' "

In the revolving charge account, Younkers' exhibit A, it is provided that the purchaser agrees "to pay in full within 30 days after the billing date on my/our account for all purchases made during the preceding billing cycle without a finance charge." The agreement then provides for additional charges for payments made after 30 days.

The retail installment contract, as noted, provides for a cash price of the property purchased and an agreement to pay the unpaid portion of the cash price plus an additional finance charge within a specified time.

Under both plans a sale is made on a cash price basis. When time is given to pay the same and an amount is assumed to be paid which is greater than the cash price with legal interest, the result is an agreement for forbearance from demanding payment of an existing debt. Hare v. General Contract Purchase Corp., 220 Ark. 601, 249 S.W.2d 973, 977.

Forbearance does not necessarily require an actual loan of money. It generally signifies the giving of time for the payment of a debt. In any transaction in which there is a delay until final payment there is forbearance as that term is used in the requirement for a finding of usury. Note, Usury—Revolving Charge Accounts and the Legality or a 1½% Monthly Charge, 2 Seton Hall L.Rev. 573, 574–575; Interest Incognito—Usury Statute Applied to Revolving Charge Account Agreement, 34 U.Pitt.L.Rev. 55, 59.

We conclude that forbearance as used in usury law is present in both credit plans offered by Younkers. The forbearance occurs when the purchaser does not pay in full within 30 days after billing date the cash price of the property or in the case of the installment plan when the buyer does not pay in full at time of purchase.

In both instances, the seller refrains from requiring the debtor to pay a debt then due in consideration of the buyer paying a finance charge. State v. J. C. Penney Co., 48 Wis.2d at 134, 179 N.W.2d at 646.

IV. The trial court distinguished the present case from State v. J. C. Penney Co., supra, Rollinger v. J. C. Penney Company, 192 N.W.2d 699 (S.D.1971) and other credit sale usury cases on the ground the Iowa usury law does not cover the element of "forbearance for a debt."

Plaintiffs cite Mallett v. Stone, 17 Iowa 64 (1864) in challenging this ruling. Mallett was an action to collect a promissory note of $1000 and foreclose a deed of trust which had been given as security for the note. After the note had become due on July 1, 1857, the promisor and the promisee had entered into a special contract whereby the holder of the note agreed to forbear payment during July for a consideration of $30 which was paid; a similar contract was made for the following month. This court affirmed the trial court's holding that there could not be foreclosure on the two special contracts of July and August. These special contracts which were usurious did not taint the original note however. These special contracts were in fact forbearance from the original note and it was this that was held usurious; the forbearing was the promisee's agreement not to collect the original note which was due on July 1, 1857. Mallett has not been cited by the courts other than for the principle that the original obligation is not tainted by a subsequent usurious contract.

Although Mallett does not answer the question as to whether the factual situation in Younkers constitutes forbearance, it stands for the principle that forbearance is within the Iowa usury law.

We hold the Iowa usury law covers the element of "forbearance for a debt."

V. The trial court held plaintiffs failed to prove the essential element of intent in

their effort to establish a usurious transaction. The court reasoned that Younkers did not have the requisite intent, impliedly or otherwise, because the time-price doctrine has been part of Iowa's usury statute since *Gilmore,* supra. The court further relied on Partch v. Krogman, 202 Iowa 524, 210 N.W. 612.

These statements concerning the element of intent as a prerequisite to the application of chapter 535, The Code, are found in 45 Am.Jur.2d, Interest & Usury, section 160:

" * * * Some cases hold that mutuality of a wrongful intent is not essential, and that it is sufficient if the lender had an intent to receive more than the lawful rate of interest, but others require an intent on one side to lend, and a corresponding intent on the other to borrow, under conditions violating the usury law. Some authorities stress the necessity of a corrupt intent to violate the usury law, but others state that the required intent is not necessarily a consciousness of the illegality of the transaction, or a specific intent to violate the statute, but only an intent to exact payments in excess of the amount of interest allowed by law."

In *Partch,* 202 Iowa at 527–528, 210 N.W. at 614, there is this statement:

"In the early case of Dickerman v. Day, 31 Iowa 444, we quoted with approval from the Supreme Court of Wisconsin in Otto v. Durege, 14 Wis. 571, as follows:

" 'Usury is a matter of intention, and to render a contract usurious, both parties must be cognizant of the facts constituting usury, and have a common purpose in evading the law. * * * The law against usury is penal in its nature, and reason and justice dictate that the forfeitures imposed by it ought not to be visited upon those who are innocent of any intentional violation of its provisions.'

"It is true that usury often hides its head, and is frequently difficult to discover; and it is the policy of the law that,

when there is an agreement, whatever its form, whereby the lender secures a profit or advantage in excess of that permitted by the statute, the transaction is tainted with usury. Lombard v. Gregory, 81 Iowa 569, 47 N.W. 298.

" 'It is the essence of a usurious transaction that there shall be an unlawful and corrupt intent, on the part of the lender, to take illegal interest, and so we must find before we can pronounce the transaction to be usurious.' Condit v. Baldwin, 21 N.Y. 219, 221 (78 Am.Dec. 137)."

On the other hand, the Wisconsin court itself in *J. C. Penney,* supra, inferentially discarded the language quoted by the *Partch* court from the earlier Wisconsin case in favor of the principle that the necessary intent may be implied if the contract is not in fact a "true" time-price sale.

Also, these comments from the dissenting opinion of Justice Beck in *Gilmore,* 28 Iowa at 228, merit recognition:

" * * * [T]he contract cannot be considered usurious unless an intent to violate the law was proved. Men's intentions are best established by their acts. In this case the interest reserved is unlawful, for it is greater than ten per centum per annum. Men are, in law, presumed to intend the consequences of their acts. The act in this case does violate the law, and the parties must be presumed to have intended that result. * * * To my mind, the findings of the jury sufficiently establish the fact that the contract was a device to evade the usury laws."

The only intent necessary is one to exact payments on either the revolving charge account or the retail installment contract in excess of the amount of interest allowed by law.

There is substantial evidence that there had been repeated incidents where Younkers charged the 18 percent "finance charge" on the revolving charge accounts and repeatedly collected 18 percent or

amounts in excess of 9 percent per annum. The evidence also established there was extensive use of the retail installment contract where the company charged the 16.25 percent "finance charge."

The corrupt intent on the part of the lender to violate the usury laws referred to in the quotation from 45 Am.Jur.2d and in the quote from Condit v. Baldwin set forth in Partch v. Krogman, consists of knowingly and intentionally charging or accepting interest at a higher rate than the law allows. See Ross v. Whitman, (Fla.App. 1966), 181 So.2d 701, 703.

There is no dispute Younkers had a definite intent of charging or accepting a "finance charge" on both types of credit in excess of the 9 percent permitted by statute. The fact Younkers may have believed *Gilmore* gave the legal right to require such finance charge does not relieve the transaction of the taint of usury. A mistake of law will not afford such relief. Commercial Credit Corporation v. Kitchens, 231 Ark. 104, 328 S.W.2d 355, 356–357; Fisher v. Bethesda Discount Corporation, 221 Md. 271, 157 A.2d 265, 269; 14 Williston on Contracts, Third Ed., section 1698A; 91 C.J.S. Usury § 14(c).

The fourth and final factor indicative of usury exists in both types of credit transactions.

We hold the revolving charge account and the retail installment contract offered by Younkers are both usurious.

VI. Plaintiffs also pray that an injunction issue restraining Younkers from the use of both credit plans as a public nuisance.

A nuisance is defined in section 657.1, The Code, as: "Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof."

Plaintiffs concede Younkers' practice in collecting more than the permissible rate of interest on its credit plans is not included within the 13 specific offenses deemed to be nuisances under section 657.2, The Code. However, they correctly assert that the statutory definitions and enumerations of nuisances do not modify the common law rule applicable to nuisances. Bates v. Quality Ready-Mix Co., 261 Iowa 696, 703, 154 N.W.2d 852, 857; Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 1107, 109 N.W.2d 695, 698.

"The basic elements of common law public nuisances are (1) unlawful or antisocial conduct that (2) in some way injures (3) a substantial number of people. The public nuisance is thus unlike the private nuisance of tort law where specific injury to an individual must be shown." Note, Usury and the Time-Price Exception, 71 Wis.L.Rev. 296, 309.

Chapter 535 was enacted for the benefit of the public generally. The State has an interest in seeing that the law is not continually violated. Where a statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated a public nuisance is created. State v. J. C. Penney Co., 48 Wis.2d at 154, 179 N.W.2d at 657.

Section 535.5, The Code, provides the remedy for violation of the usury statute in this language:

"Penalty for usury. If it shall be ascertained in any action brought on any contract that a rate of interest has been contracted for, directly or indirectly, in money or in property, greater than is authorized by this chapter, the same shall work a forfeiture of eight cents on the hundred by the year upon the amount of the principal remaining unpaid upon such contract at the time judgment is rendered thereon, and the court shall enter final judgment in favor

of the plaintiff and against the defendant for the principal sum so remaining unpaid without costs, and also against the defendant and in favor of the state, for the use of the school fund of the county in which the action is brought, for the amount of the forfeiture; and in no case where unlawful interest is contracted for shall the plaintiff have judgment for more than the principal sum, whether the unlawful interest be incorporated with the principal or not."

The only remedy available to a debtor under the foregoing statute when an usurious rate of interest is required by a contract is cancellation of interest in excess of eight percent on the unpaid balance. This eight percent interest assessed against the debtor is awarded the State for the use of the school fund. There is no provision for any reduction of principal or imposition of a criminal fine or imprisonment for usurers.

Since the statute does not impose criminal sanctions on usury, the attempt to enjoin the practice of usury here is not vulnerable to the argument that courts of equity are generally reluctant to enforce the criminal law by means of injunction.

■ Younkers had approximately 160,000 to 165,000 active revolving charge accounts and approximately 3500 active installment accounts. As stated, the revolving charge account had been used since 1965 and the retail installment contract for a number of years. Under this record it must be concluded that the usurious practice under the two credit plans offered by Younkers has been open, public, repeated, continuous, persistent and intentional and therefore constitutes a public nuisance.

The author of the annotation in 83 A.L. R.2d 848, 851, says, "The majority of the jurisdictions in which the issue has been raised hold that the practice of usury is subject to abatement by injunction." Cases from several jurisdictions are collected there.

We hold section 535.5 does not offer a speedy, adequate remedy at law to prevent the practice detailed here.

■ In view of our determination in divisions I through V, supra, that Younkers' "finance charges" on its retail installment contracts and revolving charge accounts are in excess of the interest rate allowed by statute and are usurious under section 535.4, Younkers should be enjoined from assessing its finance charges at a rate in excess of nine percent per annum on its retail installment contract and its revolving charge accounts.

Upon remand the district court is hereby directed to issue a permanent injunction in accordance with this opinion.

■ VII. In its pleadings Younkers challenged the authority of the attorney general to institute this action and asserted the court had no jurisdiction over the subject matter.

The attorney general asserts right to institute this action and obtain injunctive relief pursuant to sections 13.2 and 657.1, The Code. Although Younkers argues the point, we are convinced the attorney general is authorized to bring this action by section 13.2, which provides in part:

Duties. It shall be the duty of the attorney general, except as otherwise provided by law to:

"1. * * *

"2. Prosecute and defend in any other court or tribunal, all actions and proceedings, civil or criminal, in which the state may be a party or interested, when in his judgment, the interest of the state requires such action, or when requested to do so by the governor, executive council, or general assembly."

Younkers' contention in this respect is without merit.

VIII. In his original petition the attorney general brought this action "as a class

action in behalf of itself and all of said customers and patrons [of Younkers] who are similarly situated and affected by the unlawful practices set forth in this petition." He sought a declaratory judgment, a permanent injunction and damages under section 535.5, The Code, "in a sum equal to all interest and finance charges illegally imposed \* \* \* since May, 1969," with a portion of said judgment, equivalent to- "eight cents on the hundred by the year" of the principal sum on which the finance charge was computed, to be forfeited to the county school fund.

By amendment, plaintiffs pled that the action was also brought by Richard C. Turner on his own behalf as a customer of Younkers and member of the class.

By further amendment, and apparently in lieu of their initial prayer for damages under the code, plaintiffs sought recovery of all finance charges unlawfully imposed since May 1969 and requested the court to impress a constructive trust on that sum on the ground defendant had been unjustly enriched.

As noted at the outset, the trial court ordered those provisions of the amended petition relating to a class action and recovery of damages stricken.

Plaintiffs now challenge that ruling contending, (1) a valid class action under rule 42, R.C.P., was stated in the petition and (2) a constructive trust may be impressed on "usurious interest" paid on a contract.

Rule 42 provides:

"Class Actions. If the persons composing a class are so numerous that it is impracticable to bring all before the court, such number of them as will insure adequate representation of all may sue or be sued on behalf of all, where the character of the right involved is:

"(a) joint or common, or held primarily by one who has refused to enforce it, thereby entitling the class or its members to do so; or

"(b) several, and the action seeks to adjudicate claims which do, or may affect specific property; or

"(c) several, and a common question of law or fact affects the several rights, and a common relief is sought."

The foregoing rule is substantially the same as Federal Rule of Civil Procedure 23(a) which was in effect from 1938 to 1966. In the latter year rule 23 was completely revised. Rule 42, R.C.P. deals with what purports to be three types of class actions.

Common to all three types is this general rule: " \* \* \* [T]he persons constituting the class must be so numerous as to make it impracticable to bring them all before the court, in which case such number of them, one or more as will fairly insure the adequate representation of all, may on behalf of all, sue or be sued.

"The three types of class suit contemplated by [the] Rule \* \* \* have come to be popularly known as 'true,' 'hybrid,' and 'spurious.' \* \* \*

■ "Thus an action brought to enforce a right which is 'joint, or common or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it' is now popularly known as a 'true' class action; where the right to be enforced is several but the object of the action is adjudication of claims which do or may affect specific property involved in the action the label 'hybrid' is applied; and a suit to enforce a several right where there is a common question of law or fact affecting the several rights and a common relief is sought is known as a 'spurious' class action. The 'spurious' class action, so it is said, is merely a permissive joinder device." 2 Barron & Holtzoff, Federal Practice & Procedure, section 562 (Wright Ed. 1961).

The court in Pennsylvania Co. for Insurances, Etc. v. Deckert, 123 F.2d 979, 983 (3

Cir. 1941), distinguished the "hybrid" and "spurious" types of action in this manner: "If the rights of the individual plaintiffs are separate causes of action and they have no right to a common fund or to common property, the class action at bar is a 'spurious' one. If, upon the other hand, the individual plaintiffs having individual causes of action have also a right to a common fund or in common property, the class action may be 'hybrid.'"

Plaintiffs assert they properly pled both a "hybrid" and a "spurious" class action under the terms of rule 42(b) and (c), respectively.

Plaintiffs contend with reference to the "spurious" class action the right of each customer who has paid finance charges in excess of nine percent per annum are also several, a common relief is sought—recovery of or credit for payments of excessive interest exacted on contracts for sale of property; thus, common questions of law or fact are involved.

With reference to a "hybrid" class action plaintiffs assert they seek adjudication of claims which do affect specific property, i. e., a fund consisting of the amount of "usurious interest" paid by the customers on Younkers' two credit plans which should be impressed with a constructive trust to be held for, and subsequently distributed to, those who paid in such "usurious interest."

Plaintiffs argue that a class action for money had and received is proper in order to properly recover for Younkers' customers or credit to their charge accounts illegal interest exacted. Otherwise, Younkers would be unjustly enriched in the amount of such interest.

In the present case, those customers who had paid Younkers "usurious interest" should have such usury credited to their active accounts, if any; otherwise, they should be allowed to recover back such "usurious interest" under plaintiffs' theory.

As we understand plaintiffs' argument they contend the fund consisting of the amount of "usurious interest" paid by Younkers' customers constitutes the "specific property" required for a "hybrid" class action.

Younkers argues in support of the trial court's ruling that a person seeking to bring a class action must first allege to be and establish himself as fairly representative of the class for whom he seeks to act; the rights sought to be asserted in this action are not based upon common questions of law and fact and common relief cannot properly be sought.

■ In equity matters, such as this, where our review is de novo, it is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. In re Marriage of Jennerjohn, 203 N.W.2d 237, 240 (Iowa 1972).

■ It is the settled law in Iowa that "usurious interest" once paid cannot be recovered back. Smith, Twogood & Co. v. Coopers & Clarke, 9 Iowa 376 (1859); Nicholls v. Skeel, 12 Iowa 300 (1861); Quinn v. Boynton, 40 Iowa 304 (1875); Philips v. Gephart, 53 Iowa 396, 5 N.W. 683 (1880)

■ Since there is no right of recovery for "usurious interest" paid there is no fund in Younkers' possession on which a constructive trust can be imposed; thus, there is no "specific property" upon which to base a "hybrid" class action.

We do not agree with plaintiffs' contention that the four cases just cited only apply when the principal has not been paid.

Attention is called to the fact that section 535.5, The Code, while prohibiting re-

**568**

covery of "usurious interest" does not declare the contract void in whole or in part upon that ground. See 45 Am.Jur.2d, Interest and Usury, section 276.

Although the trial court's ruling striking all allegations concerning the class action, recovery of alleged "usurious interest" and credit for all "usurious interest" paid was made at the outset, under the circumstances shown in the record this does not affect our conclusion from our de novo review plaintiffs failed to establish a class action of either the true, hybrid or spurious type.

To summarize the foregoing opinion:

1. Contracts for the sale of property whether such contract embodies the characteristics of a revolving charge account transaction or an installment contract are governed by the provisions of section 535.-4, The Code.

2. The revolving charge accounts and the retail installment contracts offered by Younkers are both usurious.

3. Upon remand the district court is hereby directed to issue a permanent injunction enjoining Younkers from assessing its finance charges at a rate in excess of nine percent per annum on its retail installment contracts and its revolving charge accounts in accordance with this opinion.

4. Plaintiffs failed to establish a class action.

5. Plaintiffs failed to establish a right to recover alleged "usurious interest" and credit for all "usurious interest" paid by customers to Younkers.

The case is therefore—Reversed in part, affirmed in part, and remanded with directions.

All Justices concur except RAWLINGS, J., who takes no part.